The C., B. & Q. R. Co. v. Lewis ET AL.

1. **Public Lands:** RAILROAD GRANT: EVIDENCE. In an action to recover land claimed to have passed to plaintiff's grantor under a congressional grant, as deficiency lands selected within the fifteen mile limits, it was held that a certified copy of the list of such selections, from the records of the general land office, was competent evidence.

2. ——: ——: ——. The certificate of the governor of the State, made February 27, 1872, showing the construction of the road of the B. & M. R. R. Co., in accordance with the provisions of the grant, was held sufficient, and competent evidence of such fact.

3. **Acknowledgment:** WRITTEN INSTRUMENT: EVIDENCE. A lease containing mutual covenants must be acknowledged by both parties to be admissible as evidence under section 3656 of the Code.

4. ——: ——: AMENDMENT OF NOTARY'S CERTIFICATE. It is competent for a notary to amend a defective certificate of acknowledgment made by him, in accordance with the facts, at any time while he remains in office.

5. **Corporation:** DEED OF: CORPORATE SEAL. Where the signature of the officer executing a deed in behalf of a corporation is properly authenticated, the seal of the corporation affixed will be presumed to be genuine.

6. ——: POWER TO HOLD REAL ESTATE. The power of a corporation to hold real estate can only be questioned by the government from which it derives its corporate powers.

7. **Public Lands:** RAILROAD GRANT: FORFEITURE. The forfeiture of lands granted by congress to the State to aid in the construction of railroads, by the failure of a railroad to construct its line within the time prescribed by the grant, can only be insisted upon by the United States.

8. ——: ——: ——. The right to resume the lands, reserved by the State in case of the failure of the company to complete its road by a

53 101
123 401
123 404

specified date, may be waived, and such reservation does not affect the title of the company to the lands granted until the right is exercised.

9. ——: ——: PROOF OF TITLE. The certified list of lands earned, authorized by section 93 of the Code to be executed by the governor to pass the title of the State to companies having complied with the requirements of the grant, is not essential to establish the title to the lands in the company. In the absence of such certificate the company may establish its title by proof of the selection of the lands, that they are within the grant, and of the construction of the road.

10. ——: ——: ——. Facts considered which were held to establish the plaintiff's title to land under the congressional grant, and to warrant the direction of a verdict in its favor.

*Appeal from Montgomery Circuit Court.*

WEDNESDAY, MARCH 17.

THIS is an action at law for the possession of eighty acres of land of which the plaintiff claims to be the absolute owner. The defendants admit that they are in the actual possession of the land, and they deny that the plaintiff is the owner or entitled to the possession thereof. The cause was tried to a jury. The plaintiff introduced the following evidence:

1. An act of congress, approved May 15, 1856, making a grant of lands to the State of Iowa, in alternate sections, to aid in the construction of certain railroads in the State of Iowa, and the amendments thereof approved June 2, 1864, and March 3, 1865; and resolutions of congress extending the time for constructing the Burlington & Missouri River Railroad, approved March 3, 1865 and February 10, 1866. See Lester's Land Laws, Vol. 1, pages 258 and 9; Vol. 2, pages 101–105, 142–145, 150, 151 and 202.

2. An act of congress to vest in the several States and Territories the title in fee of the lands which have been or may be certified to them, approved August 3, 1854. Lester's Land Laws, Vol. 1, page 236.

3. An act of the General Assembly of the State of Iowa, passed July 14, 1856, to accept of the grant and carry into execution the trust conferred upon the State of Iowa, by the

act of congress above referred to. Revision, sections 1299–1313.

4. An act of the General Assembly of the State of Iowa, in relation to land grant lands, and to provide for a record title thereto. Code of 1873, section 93.

5. A list of lands, including the lands in controversy, in the district of lands subject to sale at Council Bluffs, outside of the six and within the fifteen miles limit of the reserve, to satisfy the grant made to the State of Iowa by the act of congress approved 15th of May, 1856, entitled an act making a grant of lands to the State of Iowa, in alternate sections, to aid in the construction of certain railroads in said State, being the lands selected by the agent of the government of Iowa, from the lands of the United States in alternate sections and parts of sections, nearest to the tier of sections within six sections in width on each side of the railroad from Burlington, on the Mississippi river, to a point on the Missouri river near the mouth of the Platte river, and in lieu of the lands in alternate sections designated by odd numbers within said six sections in width which the United States had legally sold or otherwise appropriated, or to which the rights of pre-emption have attached. This list is duly certified, March 19, 1859, by Thomas A. Hendricks, Commissioner of the General Land Office, and is appoved March 23, 1859, by J. Thompson, Secretary of the Interior. There is also attached thereto, of date March 26, 1859, the certificate of the Commissioner of the General Land Office, that the list is a true and correct exemplification of the original on file in his office.

6. A certificate to the foregoing list, of Ralph P. Lowe, Governor of the State of Iowa, dated November 9, 1859, that the list is a correct list of lands enuring to the Burlington & Missouri River Railroad Company, under the act of congress approved May 15, 1856, and the act of the legislative assembly of the State of Iowa, approved July 14, 1856.

7. A certificate of C. C. Carpenter, Governor of the State of Iowa, dated February 27, 1872, showing that on the 2d

day of June, 1864, the western terminus of the Burlington & Missouri River Railroad was at the city of Ottumwa, and that said company completed a section of twenty miles westward from the city of Ottumwa, on the 1st day of October, 1866; a further section of twenty miles on the 1st day of April, 1867; twenty miles on the 1st day of November, 1867; twenty miles on the 1st day of August, 1868; on the 1st day of August, 1868, another section of twenty miles; on the 1st day of June, 1869, a section of twenty miles; on the 10th day of August, 1869, a section of twenty miles; on the 16th day of October, 1869, a section of twenty miles; on the 26th of November, 1869, a section of twenty miles; and that on the 26th day of November, 1869, the road was completed to the Missouri river at a point opposite the city of Plattsmouth, in the State of Nebraska.

8. A certificate of J. A. Williamson, Commissioner of the General Land Office, that the foregoing certificate of Governor Carpenter is a true and literal exemplification from the original on file in his office.

9. A lease in perpetuity of the Burlington & Missouri River Railroad to the Chicago, Burlington & Quincy Railroad Company, dated the 31st day of December, 1872.

10. An act of the General Assembly of the State of Illinois, approved March 30, 1875, relating to lessees in that State, of railroads in adjoining States.

11. A deed dated July 21, 1875, from the Burlington & Missouri River Railroad Company, of all its rights, lands and interests to the Chicago, Burlington & Quincy Railroad Company.

The plaintiff read in evidence an agreed statement of facts as follows:

"1. That on the 31st day of December, 1872, and at all other dates thereafter up to the 21st day of July, 1875, the plaintiff herein, a corporation organized and having its existence under and by virtue of the laws of Illinois, was the owner in possession of and operating a continuous line of railroad from

the city of Chicago, State of Illinois, to the city of Burlington, State of Iowa.   That up to December 31, 1872, the Burlington & Missouri River Railroad Company, a corporation organized and existing under and by virtue of the laws of Iowa, was in possession of and operating a continuous line of railroad from said city of Burlington, Iowa, to a point on the Missouri river opposite the mouth of Platte river, located, built and operated within fifteen miles of the land in controversy herein.   That said railroads were at said dates connecting roads at the city of Burlington, Iowa, on the western boundary of the State of Illinois, the two making a continuous line of road from Chicago, Illinois, to the Missouri river at the point aforementioned.

"2.   It is further agreed that the said Burlington & Missouri River Railroad was built ready for the rolling stock and ready for operation as follows:

| No. of Sec. | Length of Sec. | | Distance from Ottumwa west. | | Date of Completion. |
|---|---|---|---|---|---|
| 1 | 20 | miles | 20 | miles | October 1, 1866. |
| 2 | " | " | 40 | " | April 1, 1867. |
| 3 | " | " | 60 | " | November 1, 1867. |
| 4 | " | . " | 80 | " | February 1, 1868. |
| 5 | " | " | 100 | " | August 1, 1868. |
| 6 | " | " | 120 | " | June 11, 1869. |
| 7 | " | " | 140 | " | August 10, 1869. |
| 8 | " | " | 160 | " | October 16, 1869. |
| 9 | " | " | 180 | " | November 26, 1869. |
| 10 | " | " | 200 | " | November 26, 1869. |
| 11 | 34-10 | " | 203 4-10 | | November 26, 1869. |

"Note.—Sections 10 and 11, track laid from Missouri river eastward, said road being then completed.   It having between the year 1857 and October, 1866, been built ready for the rolling stock from Burlington, Iowa to Ottumwa, Iowa."

It was further admitted in open court that the defendant Lewis was in possession of the land in controversy at the time of the commencement of this suit, and so remained until about the 1st day of January, 1878, when the defendant Lee

came into such possession through purchase from Lewis, and has been in possession ever since. The defendants introduced no evidence. Upon the introduction of the foregoing evidence the court, pursuant to request of plaintiff, directed the jury to return a verdict for the plaintiff, which was done. The defendants excepted, and appeal.

*D. H. Solomon* and *Hewett & Richards*, for appellants.

*McPherson & Scott*, for appellees.

DAY, J., I.—The defendant objected to the admission in evidence of the certificate of the Commissioner of the General Land Office, designated in the statement of facts as the fifth item of evidence introduced, on the ground of incompetency and immateriality. The overruling of this objection is assigned as error. The lands in question are without the six, and within the fifteen miles limit of the act making the grant. The act of Congress provides that "in case it shall appear that the United States have, when the lines or routes of said roads are definitely fixed, sold any sections or any parts thereof, granted as aforesaid, or the right of pre-emption has attached to the same, then it shall be lawful for any agent or agents to be appointed by the Governor of said State to select, subject to the approval of the Secretary of the Interior, from the lands of the United States nearest to the tiers of sections above specified, so much lands in alternate sections or parts of sections as shall be equal to such lands as the United States have sold or otherwise appropriated, or to which the rights of pre-emption have attached as aforesaid, which lands (thus selected in lieu of those sold, and to which pre-emption rights have attached as aforesaid, together with the sections and parts of sections designated by odd numbers as aforesaid, and appropriated as aforesaid) shall be held by the State of Iowa for the use and purpose aforesaid. *Provided*, that the land to be so located shall in no case be further than fifteen miles from the lines

1. PUBLIC lands : railroad grant : evidence.

of said roads, and selected for and on account of each of said roads."

An act of Congress approved August 3, 1854 (Lester's Land Laws, Vol. I, page 236), provides: "That in all cases where lands have been, or shall hereafter be, granted by any law of Congress to any one of the several States and territories; and where said law does not convey the fee simple title of such lands, or require patents to be issued therefor, the lists of such lands which have been, or may hereafter be, certified by the Commissioner of the General Land Office, under the seal of said office, either as originals or copies of the originals or records, shall be regarded as conveying the fee simple of all the lands embraced in such lists that are of the character contemplated by such act of Congress, and intended to be granted thereby."

The lands being outside of the six miles limit of the grant, it was necessary that they should be selected by an agent of the Governor, and that the selection should be approved by the Secretary of the Interior, in order to bring them within the provisions of the grant. The list purports to be a list of lands selected by the agent of the Governor of the State outside of the six and within the fifteen miles limit. It is approved by the Secretary of the Interior. The Commissioner of the General Land Office certifies it to be a true and correct exemplification of the original on file in his office. Such a certificate is proper under the act making the grant, and under the act above set out of August 3, 1854. Further, section 3702 of the Code provides: "Duly certified copies of all records and entries, or papers belonging to any public office or by authority of law filed to be kept therein, shall be evidence in all cases, of equal credibility with the original record or papers so filed." We have no doubt of the competency and admissibility of the commissioner's certificate in question.

II. Attached to the foregoing list of the Commissioner of the General Land Office is a certificate of R. P. Lowe, Governor of Iowa, that the list is a correct list of lands enuring

to the Burlington & Missouri River Railroad Company, under the act of Congress approved May 15, 1856, and the act of the Legislative Assembly of the State of Iowa, approved July 14, 1856, the said list having been compared with the corresponding list certified to the executive office by the Secretary of the Interior and the Commissioner of the General Land Office, and now on file in the executive department. The admission in evidence of this certificate is assigned as error. We have not found, nor has the appellee called our attention to any law requiring or authorizing the making of this certificate. Still, if its admission was error, the error, we think, was without prejudice. The certificate of the Commissioner of the General Land Office designates the lands as selected within the fifteen miles limit, and included within the terms of the grant. If there is no law requiring this certificate of the Governor, then it is not necessary to vest title in the company, and upon complying with the conditions of the grant the title of the company is complete without any such certificate. The plaintiff's title to the lands became complete upon the construction of the road. The agreed statement of facts shows that the road has been completed. In view of the facts proved and admitted, we cannot see how the admission of this certificate could have worked the defendants any prejudice.

III. The defendants assign as error the admission of the certificate of Governor Carpenter, executed the 27th day of February, 1872, referred to in the statement of facts as the seventh item of evidence introduced. Section 8 of the Amendatory Act of June 2, 1864, provides: " That no lands hereby granted shall be certified to either of said companies until the Governor of the State of Iowa shall certify to the Secretary of the Interior that the said company has completed ready for the rolling stock within one year from the first day of July next a section of not less than twenty miles from the present terminus of the completed portion of said railroad, and in each year thereafter an additional

section of twenty miles, but the number of sections per mile originally authorized shall be certified to each company upon proof as aforesaid of the completion of the additional sections of the road as aforesaid. And upon the failure of either company to complete either section as aforesaid to be annually built, the portion of the land remaining uncertified shall become subject to the control and disposition of the legislature of the State of Iowa, to aid in the completion of such road."

By a resolution approved March 3, 1865, the time fixed in the eighth section of the act of June 2, 1864, was extended one year. By a further resolution of February 10, 1866, the time for completing the first section of twenty miles from the then terminus of the Burlington & Missouri River Railroad was extended to the first day of December, 1866. The certificate of the Governor was required by, and made pursuant to, the act of 1864 and the resolutions above named. It shows the completion, on the first day of October, 1866, of twenty miles westward from the terminus of the road on June 2, 1864, and the completion of the entire road, on the 26th day of November, 1869, to the Missouri river, a distance from Ottumwa, as shown by the agreed statement of facts, of two hundred and three and four-tenths miles. It was competent for the Governor to make this certificate. The statement of the terminus on June 2, 1864, was necessarily involved in what the Governor was required to certify. The certificate of the Governor shows a full compliance with the act of June 2, 1864, as amended and extended by the resolutions above referred to.

IV. The defendants assign as error the admission in evidence of the lease of the Burlington & Missouri River Railroad Company to the Chicago, Burlington & Quincy Railroad Company. There is no proof of the signatures to the lease. Section 3656 of the Code provides: "Every private writing, except a last will and testament, after being acknowledged or proved and certi-

3. ACKNOWL-
EDGMENT;
written instrument: evidence.

fied in the manner prescribed for the proof or acknowledgment of conveyances of real property, may be read in evidence without further proof." It is claimed, however, that this lease is not properly acknowledged, and that it cannot be admitted in evidence without proof of its execution.

Many objections are urged to the sufficiency of the acknowledgment which, in the view we have taken of the question, we deem it unnecessary to consider. The lease contains covenants and agreements upon the part both of the Burlington & Missouri River Railroad Company and of the Chicago, Burlington & Quincy Railroad Company. To be binding upon one company it must appear that it was so . executed as to be binding upon the other. There is no acknowledgment of the lease as to the Chicago, Burlington & Quincy Railroad Company. Its execution, therefore, is not proved in such manner as to render it binding upon the Chicago, Burlington & Quincy Railroad Company, and for that reason it cannot be treated as binding upon the Burlington & Missouri River Railroad Company. We do not mean to hold that an acknowledgment of the lease is necessary to its validity between the parties, but simply that an acknowledgment is necessary to its introduction in evidence without proof of its execution. It was error to admit the lease in evidence. However, if the plaintiff can derive title to the land in question through the deed, independently of the lease, the admission of the lease worked the defendants no prejudice.

V. The defendants assign as error the admission of the deed from the Burlington & Missouri River Railroad Company to the Chicago, Burlington & Quincy Railroad Company. No proof of the signatures to the deed was introduced, and its admissibility in evidence rests upon its due acknowledgment. The deed bears date July 21, 1875, and concludes and is signed as follows: " In witness whereof, the said parties hereto have caused these presents to be subscribed by the respective presidents and

<span style="font-size:small">4. ——:——: amendment of notary's certificate.</span>

The C., B. & Q. R. Co. v. Lewis.

their corporate seals to be hereto affixed and attested by their respective secretaries the day and year above written.

BURLINGTON & MISSOURI RIVER RAILROAD COMPANY,
by ALPHEUS HARDY, *President.*

Witnessed by
A. THERBOURNE HARDY.

CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY,
by J. M. WALKER, *President.*

{ Burlington & Missouri } ATTEST:
{ River Railroad Co.   }                  A. T. HALL, *Secretary.*
{          SEAL.        }

{ Chicago, Burlington & } ATTEST:
{ Quincy Railroad Co.   }            I. N. DENISON, *Ass't Secretary.*
{          SEAL.        }

On the third day of August, 1875, the deed was acknowledged, on behalf of the Burlington & Missouri River Railroad Company, by Alpheus Hardy, before J. Henry Brooks, notary public. The certificate of acknowledgment seems to be defective. On the 25th day of October, 1878, a further certificate of acknowledgment was attached to the deed as follows:

"STATE OF MASSACHUSETTS, } ss.
   COUNTY OF SUFFOLK.     }

"Be it remembered that on the third (3d) day of August, A. D. 1875, before me, J. Henry Brooks, then and now a notary public in and for said county, personally appeared Alpheus Hardy, to me known to be the identical person whose signature is attached to the foregoing instrument (viz: a deed of the B. & M. R. R. Co. to the C. B. & Q. R. R. Co.) of date July 31st, 1875, and acknowledged the execution of the said deed and instrument to be his voluntary act and deed as such President for the purpose therein expressed and the voluntary act and deed of said Burlington & Missouri River Railroad Company for the purposes therein expressed, at which time the said Alpheus Hardy was the president and acting for the said last named company, B. & M. R. R. Co., in the exe-

cution of said deed and instrument, and the custodian of the seal of said company, which is affixed.

"Witness my hand and seal notarial this 25th day of October, A. D. 1878.

{ J. Henry Brooks, Notary Public, Suffolk County, Mass. }        J. HENRY BROOKS,
                                  Notary Public in and for Suffolk Co., Mass."

The certificate to the acknowledgment of James M. Walker is as follows:

" STATE OF ILLINOIS, } ss.
   COUNTY OF COOK.

" On this ninth day of August, A. D. eighteen hundred and seventy-five (1875), before me, Lester O. Goddard, a notary public of the State of Illinois, in and for Cook county, duly commissioned, personally came James M. Walker, who is personally known to me to be the president of the Chicago, Burlington & Quincy Railroad Company, described in the foregoing instrument, and acknowledged that he signed the foregoing instrument as his free and voluntary act, for the uses and purposes therein set forth, and that the said company also executed the said instrument as its free and voluntary act for the uses and purposes therein set forth.

" In witness whereof, I have hereto set my hand and official seal the day and year last above written.

{ Lester O. Goddard, Notary Public, Cook Co., Illinois. }        LESTER O. GODDARD,
                                          Notary Public."

The defendants insist that the second certificate to the acknowledgment of Alpheus Hardy should be entirely disregarded, because when the notary acted once his power over his certificate ceased. We think, however, that whilst the notary continued in office it was competent for him to amend his certificate, provided the amendment is in accordance with the real facts. The certificate of acknowledgment as amended, was, we think, sufficient to authorize the admission of the deed in evidence without further proof of its execution. It is, however, urged that there is no showing that the president

has power to convey lands of the company, and that there is no proof of the sale by the corporation. The signature of the officer executing the deed is established by the acknowledgment. "The signature of the officer of the corporation executing the instrument being proved, the seal will be presumed genuine until the presumption is rebutted." Angell & Ames on Corporations, section 226, and cases cited. " When the seal of the corporation appears to be affixed to an instrument, and the signatures of the officers executing it are proved, the courts will presume they did not exceed their authority. The seal itself is *prima facie* evidence that it was affixed to the instrument under proper authority, and the burden is thrown upon the party objecting to the instrument to overcome this presumption. Angell & Ames on Corporations, section 224, and cases cited." *Blackshire v. The Iowa Homestead Company*, 39 Iowa, 624. Under the doctrine of this case, the deed, *prima facie*, was executed by proper authority. The burden of establishing that it was not is cast upon the defendants.

*5. CORPORA-TION : deed of : corporate seal.*

VI. It is urged, however, that the plaintiff has no power to receive or hold the land in question, it not being part of the franchises of the road nor depot grounds, nor for machine shops, nor for any of the purposes connected with the plaintiff's business, or within plaintiff's corporate powers. It is not claimed that the plaintiff may not hold lands for some purposes. Upon the contrary it seems to be conceded that the plaintiff may hold some lands for some purposes. The objection is that the plaintiff cannot hold the lands in question for the purposes for which they are held. In our opinion the defendants cannot raise this objection. This is a question between the corporation and the government, and is one which does not concern the defendants. See Angell and Ames on Corporations, sections 152 and 3; *Union National Bank of St. Louis v. Mathews*, 98 U. S., 621; *National Water and Mining Company v. Clarkin et al.*, 14 Cal., 544.

*6. ———: power to hold real estate.*

VII.   It is claimed that the act of the General Assembly of Iowa, of July 14, 1856, conferring upon the Burlington & Missouri River Railroad Company the lands acquired in trust under the act of congress of May 15, 1856, is void, and that no rights can be predicated thereon.   It may be conceded that the Iowa Legislature could not convey an absolute estate which would vest in the railroad without performance of the conditions contained in the act of congress.   *Schulenberg v. Harriman*, 21 Wall., 44; *Farnsworth v. Mississippi & Pacific Railroad Company*, 2 Otto, 49.

But it cannot be doubted that the State could grant its interest in the lands, and vest a title which would become absolute upon the performance of the conditions imposed. This is the theory of all the decisions of this court upon the subject of the grant.   A contrary decision would overturn everything which has been determined respecting this grant. Section 3 of the act of May 15, 1856, provides that the lands thereby granted to the State shall be subject to the disposal of the legislature thereof, for the purposes named in the grant. This clearly confers upon the State power to dispose of the lands by legislative enactment, subject to the conditions imposed by the origianl grant.

VIII.   It is urged, however, as we understand the position of appellants, that the Burlington & Missouri River Railroad Company did not complete its road within the time prescribed in the act of congress, has not performed the conditions of the grant, and, therefore, is not entitled to the lands.   We need not determine whether the road was in fact completed within the time specified in the original grant as amended by the act of June 2, 1864 and March 3, 1865, and the resolutions of March 3, 1865 and February 10, 1866.   We believe it could be shown that the road was completed within the time limited by these acts and resolutions.   But, however this may be, the defendants cannot insist upon the forfeiture.   The forfeiture may be waived by the United States.   *Chicago, Rock Island & Pa-*

7. PUBLIC lands : railroad grant : forfeiture.

*cific Railroad Co. v. Grinnell*, 51 Iowa, 476. The act of June 2, 1864, and the resolutions of March 3, 1865 and February 10, 1866, clearly constitute a waiver of the conditions as to time.

IX. It is urged further, that the Burlington & Missouri River Railroad Company acquired no title to the land, because

8. ——: ——: it did not complete its road within the time limited in the grant of the General Assembly of the State of Iowa. Section 1305 of the Revision. In this section the State reserved the power to resume all rights conferred upon any road failing to complete its line by the 1st day of December, 1865. This is the mere reservation of a right which the State may waive. The reservation of the right to resume does not affect the title of the road until the right is exercised. *Chicago, Rock Island & Pacific Railroad Company v. Grinnell, supra.*

X. Section 93 of the Code provides that in cases where lands have been granted to the State of Iowa by act of con-

9. ——: ——: gress, and certified lists have been made to the
proof of title. State by the Commissioner of the General Land Office, and such lands have been granted by act of the General Assembly to any company which shall have complied with and fulfilled the conditions of the grant, the Register of the State Land Office is authorized to prepare lists of lands in each county inuring to such grantee, which shall be signed by the governor, attested by the Secretary of State, and certified by the register, and shall vest in the grantee the right of the State to the lands therein described. The defendants insist that without this certificate the plaintiff's title cannot be made out. If such certificate had been introduced it would have dispensed with all other proof, and made at least a *prima facie* case. In the absence of such certificate the plaintiff must prove the selection of the lands, that they are within the grant, and the construction of the road so as to entitle the grantee to the lands under the act. Whilst the certificate

would-have established the title of the grantee, it is not essential to such title.

XI.   It is claimed that the court erred in directing a verdict for the plaintiff.   This was done in *Chicago, Rock Island & Pacific Railroad v. Grinnell, supra,* under facts in all material respects the same as in this case, and the action was approved.   We may have overlooked some of the positions of the defendants, and some of their objections to the plaintiff's title.   We have, however, considered and discussed all the questions which we regard as material.   The lands in question are situated within fifteen miles of the constructed line of the Burlington & Missouri River Railroad, and they are locally within the grant of May 15, 1856.   They have been selected by an agent of the Governor of the State, and the selection has been approved by the Secretary of the Interior. They have been certified to the State by the Commissioner of the General Land Office.   They have been granted to the Burlington & Missouri River Railroad Company by the Legislature of Iowa.   The Burlington & Missouri River Railroad has been completed to its terminal point on the Missouri river. If not completed within the line limited by act of congress the United States has waived the condition.   The State of Iowa has never resumed the lands for failure to construct the road within the time prescribed in the act of the legislature. The Burlington & Missouri River Railroad Company has conveyed its interest in the lands to the plaintiff.   Under these circumstances the plaintiff's title is complete, and the court did not err in directing a verdict for the plaintiff.

AFFIRMED.