JOHN WATKINS, Appellee, v. THE IOWA CENTRAL RAILWAY COMPANY, Appellant, O. H MOCK, Intervener.

**Pleadings:** DEMURRER: PLEADING OVER.   Where an exception to 1   a ruling sustaining a demurrer is taken, error in the ruling is not waived by the filing of an amended pleading which is but a repetition of the first.

**Pleading Over:** MOTION TO STRIKE.   The sufficiency of a pleading 2   filed after a demurrer has been sustained, which introduces new matter, cannot be tested by a motion to strike.

**Condemnation:** CONVEYANCE IN FEE SIMPLE: NONUSER: REVERSION: 8   Where land has been conveyed to a railroad company in fee simple its title is not lost by nonuser, and damages for right of way over the same cannot be recovered by one claiming title thereto by reversion on the ground of nonuser.

**Estoppel.**   An estoppel must be specially pleaded, and when first 4   suggested on appeal will not be considered.

*Appeal from Monroe District Court.*—HON. C. W. VERMIL-LION, Judge.

MONDAY, MARCH, 21, 1904.

This is a proceeding to condemn a right of way, formerly owned by the Central Railroad of Iowa, over the northwest quarter of the northwest quarter of the southeast quarter of section 22 in a township in Monroe county, Iowa. It is averred in a paper filed by the Iowa Central Company that the owner of the said ten acres and the railway company could not agree upon the compensation to be paid therefor, and a sheriff's jury was asked to assess the damages. Thereupon a jury was appointed, which viewed the premises and reported as follows: "We entered upon the ground owned by John Watkins, and described as follows: The northwest one-fourth of the northwest one-fourth of the southeast one-fourth of section 22, township 72, range 17 west, in Monroe county, Iowa, being the right of way formerly belonging to the Central Railroad of Iowa Company—and viewed the same for the purpose of ascertaining the damages that would be sustained by him aforesaid. We do not find that he or any of the prior owners of said land has ever paid back the damage which was originally paid by the corporation that first obtained the right of way. Guided by the law of this state in such cases made and provided, viz., Section 2016 of the Code of 1897, we do hereby assess the damage of the said property at three hundred dollars, to be disposed of as provided in said Section 2016 of the Code, and return this as our finding and verdict." Plaintiff, Watkins, was served with notice of the proceedings. Thereupon the railway company appealed to the district court, by serving notice upon the sheriff and the plaintiff herein. After the case reached the district court, and in January of the year 1899, defendant railway company filed an answer in which it denied that plaintiff was entitled to any compensation, for the reason that plaintiff's grantor, John Mock, conveyed the right of way to the Iowa

Central Railroad Company, receiving full compensation therefor; that neither Mock nor his grantees ever refunded the consideration so received—and denied that plaintiff ever owned or had any interest in the right of way which the defendant sought to condemn, for the reason that his deed expressly excluded the right of way. Plaintiff thereupon filed a motion for a more specific statement, which was sustained; and on January 16, 1899, defendant filed an amendment setting forth more specifically the compensation received by Mock for his conveyance of the strip of land, and meeting the claim of abandonment made by the plaintiff. On January 21st plaintiff filed a demurrer to the answer as amended. This demurrer was withdrawn and another filed March 21st, which was submitted to the court and sustained on March 29th; the defendant duly excepting to the ruling. April 7, 1899, one O. H. Mock intervened, claiming one-half of the compensation awarded or to be awarded on the trial.

Thereafter, and on November 2, 1900, the defendant filed a substituted and amended answer, in which it denied that either the plaintiff or Mock, the intervener, was entitled to recover compensation for the right of way, for the reason that plaintiff never owned any part of the land covered thereby. It also pleaded that in the year 1869 John Mock, who was then the owner of the land, conveyed the premises sought to be condemned, with other real estate, for a valuable consideration, to the Iowa Central Railroad Company; a copy of the deed being attached to the answer. It averred that neither Mock, nor any of his grantees, had refunded the consideration received, and further stated that prior to 1870 the Iowa Central Railroad Company graded the roadbed in question, and that in 1869 the Central Railroad Company of Iowa acquired the right of way by purchase from the Iowa Central Railroad Company. It further averred that in 1879 the Moulton & Albia Railroad Company condemned the property as an abandoned right of way, and soon thereafter constructed a railroad thereon, which it operated until 1888, when it ceased to operate the same, and that in 1897 it re-

moved the rails therefrom; and defendant averred that it was seeking to condemn an abandoned right of way and road-bed, that it had full title to the same, and that plaintiff had no interest therein. Thereupon plaintiff filed a motion for a more specific statement in this substituted answer, which was sustained; and defendant thereupon filed an amendment to its substituted answer, in which it pleaded the convey-ance from Mock to it under date of March 29, 1869. It also pleaded that in the year 1869 the defendant became the owner of the strip of ground in fee simple, and that in the same year it graded a roadbed over said strip. It also pleaded (and we quote verbatim) the following: "The defendant did not state or intimate in said amended answer that either the said Iowa Central Railroad Company or the Cen-tral Railroad Company of Iowa ever laid the track or oper-ated a railroad on that part of the right of way south of Al-bia; and now, in this amendment, the defendant does not wish to be understood as saying or intimating that either the two last named corporations have ever operated a line of rail-road over or along the said strip of ground, or on any part of the road graded south of Albia, and will not claim that it has; and this it says in response to the first ground of this motion sustained by the court. As to the second ground of objection stated in the motion, the defendant states that, while the Albia & Moulton Railroad Company condemned the right of way from Albia south, it is not certain whether it embraced the strip of ground in question, but, at all events it did not lay down its track upon the road bed which had been constructed upon this particular strip of ground, and did not operate its road thereon. The defendant pleads that the Iowa Central Railroad Company by said conveyance be-came the full and unqualified owner of said strip of ground, by title in fee simple, and it is immaterial whether the oper-ation of a line of railroad thereon has been abandoned; that, as it owned the land, it had the legal right to use it, or not, for railroad purposes. And the defendant further pleads that as the plaintiff's deed of conveyance limits his ownership

to the northwest right of way line, and does not pretend to include any part of said strip of ground, he (the plaintiff) has not sustained any damage by the act of this defendant in taking or appropriating said strip of ground for its road, and all this applies to the intervener." On August 22, 1902, plaintiff filed a motion to strike the substituted answer as amended, on the ground that it pleaded nothing save what appeared in the original answer, to which a demurrer had been sustained, and was a mere repetition of facts already pleaded in the answer which had been held insufficient. This motion was sustained, and the defendant excepted. Thereupon a trial was had to a jury, resulting in a verdict, and judgment for plaintiff in the sum of $400, on which judgment was rendered. Defendant appeals.—*Reversed.*

*George W. Seevers* and *T. B. Perry* for appellant.

*Clarkson & Bates* for appellee.

*N. E. Kendall* for intervener.

DEEMER, C. J.—This long statement of the issues and proceedings seems necessary to an understanding of the exact points presented. Defendant complains of the ruling made March 29th on the plaintiff's demurrer to the defendant's answer and amendment thereto, and of the ruling striking its substituted answer and amendments thereto, pursuant to plaintiff's motion filed August 22, 1902. Plaintiff says that, by pleading over after the ruling on the demurrer, defendant waived any error in that ruling, and that the only question is the correctness of the ruling on the motion to strike, while the defendant contends that it has the right to be heard on both of these rulings. There is no doubt that, when one pleads over after an adverse ruling on a demurrer, he by so doing waives the particular error in that ruling, but such ruling does not, under our present practice, constitute an adjudication; and the same question may be presented in other ways, as by motion in arrest, to direct a verdict, objections to evidence, or in any other recognized mode. *Pierson v. Ind. Dis.,* 106 Iowa, 695; *Frum v. Keeney,* 109 Iowa,

393; *Geiser Mfg. Co. v. Krogman,* 111 Iowa, 503. However, if it affirmatively appears that the unsuccessful party did not waive the error in the ruling, this is sufficient. *Denby v. Fie,* 106 Iowa, 299. As to the ruling on the motion to strike the only question to be considered is whether or not the substituted pleading is a mere repetition of the former one. If it is, then the ruling on the motion must be sustained. If it is not, then, no matter what the character of the new matter, the ruling must be reversed. *McKee v. Ill. Central R. Co.,* 121 Iowa, 550, and cases cited.

But these rules must not be so construed as to prevent a party from presenting his cause of action or defense to this court on appeal. If, after a ruling on a demurrer, a party excepting to that ruling pleads over a mere repetition of the matter theretofore stated in the pleading demurred to, he does not, of course, waive the error in the ruling on the demurrer. By so doing he manifestly does not intend to waive the error in the ruling on the demurrer, if any there be. Moreover, it would be little short of ridiculous to say that by repleading the same matter he is pleading over, and for that reason is concluded by the ruling, and that he cannot complain of the action of the court in striking his substituted pleading from the files because a mere repetition of the matters stated in the pleading demurred to. He either does not plead over by reasserting the same matters, or, if he does, such pleading should not be held to be a waiver of the ruling theretofore properly excepted to. Our rules of procedure are not intended as a trap to catch the unwary. Of course, if no exception is taken to the ruling on the demurrer, and the party whose pleading is attacked makes no exception thereto, but pleads over, and the demurring party moves to strike it, because a mere repetition, the only question then to be considered is the correctness of the ruling on the motion to strike. By failing to except to the ruling on the demurrer, the pleader accepts it as the law of the case, and the only ruling he challenges is the one on the motion to strike. This is all that is held in the

<small>1. DEMURRER: pleading over.</small>

*McKee Case, supra,* which is the only case relied upon by appellee, decided since our present Code went into effect. In that case there was no exception to the ruling on the demurrer, and no error was assigned thereon. The only assignment was that the court erred in sustaining a motion to strike an amended and substituted petition from the files. And the only question for decision in that case was whether there was error in striking it, because of its being a mere repetition of a former pleading which had been held insufficient. Here the defendant did not acquiesce in the ruling on the demurrer, but excepted to the same, and either did or did not replead the same matter in its substituted answer, as amended. If it did replead the same matter as a defense, it did not, of course, acquiesce in the ruling, for it still insisted on the matter being defensive, and did not really plead over. If it did introduce any new issue, no matter whether this new matter 2. PLEADING constituted a defense, in law, or not, the trial over: motion to strike. court was in error in sustaining the motion to strike, based on the single ground that the pleading was a mere repetition. New matter introduced as a defense cannot be attacked by a motion to strike on the ground that it is a mere repetition of something stated in a former pleading. The sufficiency of the new matter as a defense to the plaintiff's claim can not be tested by such a motion.

Even on plaintiff's theory of the case, we find that new matter was pleaded in the substituted answer and amendments thereto, and the trial court was in error in striking it, for the reasons stated. But we find that many, if not most, of the questions presented by the demurrer to defendant's first answer and amendments thereto were again presented by objections to evidence, and in defendant's motions in arrest of judgment and for a new trial, and that we must consider the questions presented by the rulings complained of; that is to say, the rulings on the demurrer, and on the motion to strike the substituted answer as amended.

From the record we extract the following facts, shown by the pleadings which were attacked by the plaintiff. Prior

to March 29, 1869, John Mock was the owner of the strip

**3. CONDEMNA-TION: convey-ances in fee simple: non-user: rever-sion.** of land in controversy. On that day he con-veyed by deed of bargain and sale to the Iowa Central Railroad Company the following de-scribed real estate, to wit: "So much of the southwest quarter of the northeast quarter, and the north-west quarter of the southeast quarter of section twenty-two, township seventy-two north of range seventeen west, as lies within fifty feet of the center line of the main track of the Iowa Central Railroad, as the same is surveyed, staked out and marked upon the ground, being fifty feet in width on each side of said center line." This includes the land in con-troversy. There is no showing in the deed that this was for a right of way, or that it was to be used for railway purposes. The deed, on its face, conveys an absolute estate in fee sim-ple. True, work was done on the land by the grantee for railway purposes, but it never established a line of road there-on. It also appears that plaintiff obtained whatever title he has from John Mock and wife in the year 1871. His deed of conveyance describes his land by metes and bounds, and no part of the land in dispute is covered thereby. The de-scription confines the tract granted to that outside of and be-yond the land conveyed to the Iowa Central Railroad Com-pany. The grant is clearly limited to that outside of and be-yond the right of way. *Georgia R. R. v. Hamilton,* 59 Ga. 171; *Church v. Stiles,* 59 Vt. 642 (10 Atl. Rep. 674); *May-nard v. Weeks,* 41 Vt. 617; *Williams v. R. Co.,* 50 Wis. 71 (5 N. W. Rep. 482); *Reid v. Klein,* 138 Ind. 484 (37 N. E. Rep. 967); *Perry v. Keith,* 93 Me. 433 (45 Atl. Rep. 511); *Newton v. R. Co.,* 110 Ala. 474 (19 South. Rep. 19). Plaintiff therefore never obtained title to the strip, unless he obtained it through reversion, by reason of the abandonment of the so-called right of way by the railroad company.

In another amendment to its answer, the defendant pleaded that the Centerville, Moravia & Albia Railroad Com-pany took possession of the right of way in question in the year 1880, laid down its track thereon, and has operated its

road thereon ever since. It also pleaded as follows: "The defendant does not claim that the Centerville, Moravia & Albia Railroad Company condemned the right of way in question, which it occupied with its road, but it actually did open and notoriously operate its roadbed on said right of way in question, and has ever since 1880, by and with the consent of the Central Railroad Company of Iowa, in the first place, and by the present defendant as its successor. The Centerville, Moravia & Albia Railroad track does not extend west of the center line of said old right of way, but it claims the use of the right of way west of said center line for right of way privileges." A demurrer to this amendment to the answer was also sustained, and exception taken. It thus appears that the strip of land has been used by the Centerville, Moravia & Albia Railroad Company from the year 1880 down to the present, by and with the consent of the defendant and its predecessors and successors in interest. These are the facts pleaded, and the question is, do they constitute a defense to plaintiff's claim for damages? What purports to be a copy of the original deed from Mock and wife to the Iowa Central Railroad Company, of the strip of land in dispute, appears in appellee's abstract; but it does not appear to have been introduced in evidence, and it is not made a part of the pleadings attacked. It differs materially from the one set up by defendant in its answer, in that it shows a conveyance for right of way purposes, instead of a deed in fee simple, as shown in defendant's pleadings. We must accept the deed set up by the defendant in its answer as being the true one, and consider the case from that standpoint. Under this showing, is plaintiff entitled to recover compensation for the strip of ground taken by the defendant? We think not, and, as briefly as may be, shall state our reasons therefor.

For the purposes of the case, we shall assume that defendant company has not used this strip of ground for railway purposes since the year 1870. But, before plaintiff can recover, he must show that the title thereto reverted to him by this nonuser. Remembering that this strip was conveyed

by Mock, the original owner, to the defendant or its grantors by deed which would ordinarily convey a fee-simple title, and that plaintiff must base his claim on reversion thereof to him, we have to inquire, first, whether or not nonuser by the defendant or its grantees operated as an abandonment of its title; and, second, whether, conceding there was an abandonment, title passed to plaintiff, as an adjoining owner of the strip. It is contended that defendant took no greater title through its deed from Mock that it would have acquired by condemnation proceedings under the statute, whereby it receives simply an easement in the land for railway purposes. If this be true, it is difficult to see how the fee could pass through nonuser of the easement from Mock, who at all times owned it, to the plaintiff, who never received any conveyance therefor. Plaintiff's claim to it is not for public purposes, but for his own private benefit and advantage; and the Legislature can hardly be supposed to have intended to pass title taken for public use through *ad quod damnum* proceedings to a private person, even through nonuser of the title or easement obtained thereby. If such is to be the construction of the statutes, the writer, and perhaps other members of the court, would have no hesitation in holding them unconstitutional. But we need not speculate on this point. There is no doubt that the deed from Mock to the defendant conveyed a fee-simple title to the strip of land. Even if it had conveyed a mere easement, we have held that Code, section 2015, does not apply to an easement acquired by express grant, and that failure to use the same, even when accompanied by possession of the original owner, in the absence of any act of his preventing the use, will not defeat the easement. *Noll v. Dubuque, etc., R. Co.*, 32 Iowa, 66. This decision was rendered long after the adoption of chapter 91, page 95, Acts 13th General Assembly, which, so far as this point is concerned, is to all intents and purposes the same as section 2015 of the Code. See also, *Barlow v. C., R. I. & P. R. R.*, 29 Iowa, 276. These decisions have been followed in other states and jurisdictions. See *Townsend v. Mich. Cent.*

R. Co., 101 Fed. Rep. 761 (42 C. C. A. 570) ; McCue v. Bellingham Co., 5 Wash. 159 (31 Pac. Rep. 461) ; Mouat v. Scattle R. Co., 16 Wash. 89 (47 Pac. Rep. 233) ; Durfec v. P., D. & E. Ry. Co., 140 Ill. 439 (30 N. E. Rep. 686). But we need not at this time rely upon this proposition alone; for some of the members of the court as now constituted have doubts as to its soundness.

In the instant case the deed to the defendant was not of a right of way, or for railway purposes, but of a fee-simple title. That a railway company has the right to take such a deed, see M. & St. L. R. R. v. Lindquist, 119 Iowa, 148; Page v. Heineberg, 40 Vt. 81 (94 Am. Dec. 378) ; State v. Brown, 27 N. J. Law, 13; Holt v. Somerville, 127 Mass. 408; Yates v. Van De Bogert, 56 N. Y. 526; Heath v. Barmore, 50 N. Y. 302. There can be no doubt _that Mock parted with the fee-simple title to this strip of land, and that defendant, a corporation duly organized, received that fee. If it cannot hold it, it is because of some limitation in its charter or some provision of law. We find no provision of law which prevents its acquiring such title by purchase, and nothing appears as to its charter powers. Even if the state had passed an act prohibiting it from acquiring absolute title we do not see how plaintiff could advantage himself thereof The original grantor might in some cases do so, but surely a stranger can not. When a corporation is authorized to hold real estate for some purposes, or to a limited extent, a deed to it is not void, although the lands were for other purposes or beyond the limit allowed. As between the parties, the deed passes title, and the state alone can inquire into the matter by direct proceedings. Natoma Water & Min. Co. v. Catkin, 14 Cal. 544; Cowell v. Springs Co., 100 U. S. 55 (25 L. Ed. 547) ; Nat. Bank v. Matthews, 98 U. S. 621 (25 L. Ed. 188) ; Barnes v. Suddard, 117 Ill. 237 (7 N. E. Rep. 477) ; Hayward v. Davidson, 41 Ind. 212; De Camp v. Dobbins, 29 N. J. Eq. 36; De Camp v. Dobins, 31 N. J. Eq. 671. There is broad presumption that a conveyance to a corporation is for a purpose for which it is authorized to hold

real estate. *Millers' Bank v. R. R.,* 17 Wis. 372; *New England Co. v. Robinson,* 25 Ind. 536; *Lancaster v. Improvement Co.,* 140 N. Y. 576 (35 N. E. Rep. 964, 24 L. R. A. 322). In *Heath v. Barmore,* 50 N. Y. 302, it is held, and with good reason, that, although on condemnation nothing but an easement could be acquired, yet nevertheless a railway company may acquire a fee by deed. This necessarily follows, we think, if the foregoing doctrines are sound. The cases quite uniformly hold that, where a fee simple is taken, there is and can be no reversion. See cases cited in Lewis on Eminent Domain, in section 596, and note; also *Barlow v. R. Co., supra.* That a deed such as the one in question conveys a fee, see *Cin. R. R. v. Geisel,* 119 Ind. 77 (21 N. E. Rep. 470); *Hill v. Western Vermont Co.,* 32 Vt. 68; *Nicoll v. R. Co.,* 12 N. Y. 121. If the conveyance was simply of a right of way, a different rule might obtain, under the doctrine announced in *Brown v. Young,* 69 Iowa, 625; *Smith v. Hall,* 103 Iowa, 95. But as we have seen, there is no such question here, and we leave that point simply with the suggestions already made. As to the power of corporations to take and hold real estate, see Jones on Real Property in Conveyancing, section 169 *et seq.,* and cases cited. We are firmly committed to the doctrines heretofore announced in *C., B. & Q. R. R. v. Lewis,* 53 Iowa, 101, where we said that such questions as the right of a corporation to hold real estate where it could hold for any purpose are between the corporation and the government, and not for the grantor or his grantees. In that case we cited some of the authorities already referred to with approval in this opinion.

This settles, as it seems to us, all question regarding the right of the defendant company to hold the title which it purchased, to wit, the fee-simple title. It follows, then, that, as defendant company received a deed in fee simple for the strip of land in controversy, there is nothing to revert or pass either to Mock or to plaintiff, who claims it by reason of being an adjoining owner. Moreover, it is evident that Mock

did not intend to convey the strip which he had theretofore conveyed to the defendant to the plaintiff, Watkins, for he expressly limited the land conveyed to him (Watkins) to that north and west of the land in controversy. He thus recognized the force and effect of his conveyance to the defendant.

But plaintiff says, in argument, that as defendant brought condemnation proceedings to establish plaintiff's damages, it is estopped from claiming that plaintiff has no 4. ESTOPPEL. title. This point was not made by the demurrer or in the motion to strike, nor was it made during the trial of the case in any manner whatsoever. When an estoppel is relied upon, it must be specially pleaded. This is familiar doctrine. There is no suggestion in the pleadings of any such motion. It was not made a ground of demurrer, nor does it appear to have been considered during the trial. For this reason, we cannot consider it.

This settles the case, and, of necessity, calls for a reversal thereof.

The writer, however, cannot forego expressing these further thoughts, which, to his mind, are also determinative of the case: First, that, as defendant obtained its right of way by deed, sections 2015 and 2016 do not apply, in the absence of pleading and proof of adverse possession, under the doctrine of the *Noll Case,* and others like it, which have already been cited. In other words, mere nonuser will not forfeit the easement, conceding it to be such, when that easement is obtained by deed, rather than by *ad quod* condemnaion proceedings. He is further of opinion that, upon nonuser of an easement acquired either by condemnation or by deed, the title does not pass to a stranger to the legal title. If the railway company acquires nothing but an easement, the title has never been out of the original grantor; and it would be unconstitutional for the Legislature to attempt to pass that title to a stranger who never had any interest in it, and who did not wish to use it for public purposes. Plaintiff never did buy this strip of land. If the title passed to the railway company, then, of course, he never had any interest therein.

See *Cole v. Hadley,* 162 Mass. 579 (39 N. E. Rep. 279). If the title did not pass to the railway company, and all that it acquired was an easement, then the title never passed from Mock; and, as he did not convey that title to plaintiff, he (plaintiff) never had any interest therein. So that, no matter which horn of the dilemma is taken, plaintiff never had any interest in the land in controversy. I am aware that something said in *Smith v. Hall,* 103 Iowa, 95, seems to run counter to this, but the exact question here decided was not considered or passed upon in that case. Moreover, the statute there construed was not in force when the alleged abandonment occurred in this case, and at that time the Legislature had not undertaken to direct the course of the reversion. That statute first appeared as chapter 15, page 14, Acts 18th General Assembly. The abandonment, if there was one here, occurred before that date, for the reason that since that time, according to the allegations of the last answer, another railway has at all times been in possession of and occupying a line of road over the land in controversy, with the permission of the original grantee from Mock of the strip. The conveyance in the *Smith-Hall Case* was not of a fee-simple title, but of a right of way only.

Many of the questions we have considered as arising on the demurrer and the motion to strike were raised by objections to testimony and by requests for instructions; hence, even if it be said that, for technical reasons, the matters already considered are not in the case on these rulings, we should yet be compelled to consider them, because of these objections and requests.

The result of the whole matter is that the case must be reversed, and remanded for a new trial in accord with the views expressed by the majority in this opinion.—REVERSED.

WEAVER, J. (dissenting).—I cannot concur in the opinion prepared by the Chief Justice. In my judgment, it gives an unwarranted force and effect to the alleged conveyance to the railroad company, and reverses the policy of this court, as settled by its former decisions.

I.   Plaintiff's title and his right to recover damages are secured to him by statute.   The legal capacity of a railroad corporation to take title to land is conferred by Code, section 1995, where it is provided that such company may "take and hold   *   *   *   so much real estate as may be necessary for the location and convenient use of its railway."   This language defines both the amount or quantity of lands and the nature of the estate therein which the company may acquire. For its roadbed and track and the operation of its trains it reasonably needs no more than is implied in the words "right of way"—an expression, the universal use of which by railway men and by the people generally, indicates the accepted and correct idea of the corporate tenure of the narrow strip of land devoted to the construction of the road and operation of trains.   The same statute (Code, section 1999) provides two methods by which a right of way may be acquired: First, by grant from or agreement with the landowner; and, second, by condemnation proceedings.   By either method the thing acquired is a right of way.   If it is conveyed by deed absolute in form, the company doubtless takes a fee; but it is a fee in land for a right of way, and carries with it at all times the possibility of reversion to the owner of the tract from which it was taken in the event of voluntary abandonment of such public use by the grantee.   This proposition is not a denial of the corporate power to hold land—an objection which can be raised by the state alone—but goes simply to the construction and effect of the conveyance under which the corporation claims.   The case of R. Co. v. Lewis, 53 Iowa, 101, cited and relied upon by the majority, is therefore clearly inapplicable.   If the company takes title to land subject to an express or implied qualification by which in a certain contingency such title is lost by reversion or otherwise, there is, I think, no rule or principle which prevents a party claiming the benefit of such reversion from asserting his right at law or in equity according to the usual modes of procedure. Quo warranto by the state is designed to protect public interests, and not to enforce private rights.   The question pre-

sented in the case before us is strictly one of private right—
one with which the public has no immediate concern—and
action for its enforcement will lie against the corporation pre-
cisely as it would against a private individual.   Continuing
our examination of the same statute we find that, after pre-
scribing the methods by which a railroad company may ac-
quire title to right of way, it further provides that such right
may be lost, and the land restored to the original owner, or
to his grantees, of the tract from which it was taken, when-
ever it shall appear that the company has voluntarily aban-
doned and failed to make public use of such right of way for
a prescribed period of years.   In providing for this reversion,
the statute makes no discrimination between a right of way
obtained by grant and that which has been obtained by con-
demnation.   For us to thus discriminate is for the. court to
ingraft upon the statute an exception which the Legislature
did not make—a venture in judicial legislation which we
should be careful to avoid.   The case of *Noll v. R. R.*, 32
Iowa, 66, cited by the majority, gives no countenance to such
holding.   The statute there construed did not provide for any
reversion of the title to the owner of the original tract, or to
any other person.   It provided simply that an abandonment
of a right of way for a certain period rendered it liable to be
taken by another company and appropriated to the use of
another road.   In other words, by the statute then in force
the state, in the exercise of its power of eminent domain, de-
clared that the right of way, having once been appropriated
to public use, might, upon abandonment by the original bene-
ficiary of such appropriation, be occupied and utilized by an-
other company without the payment of damages to those who
had already received compensation from its predecessor.
True, in the case cited the court says the right of way there
in dispute was obtained by grant, and that the "easement"
thus acquired was not subject to extinguishment  by mere
lapse of time.   The proposition thus stated is undisputable,
and it was equally true of an easement by  condemnation.
The statute at that time did not provide any loss of the rail-

road easement, however acquired, by mere nonuser without adverse possession; nor were easements generally liable to be thus extinguished at common law. The case at bar presents an entirely different situation. Railroad companies, it must be kept in mind, are creatures of the legislative power, with public duties and functions; and it is unquestionably within the province of the Legislature to provide that the failure of a corporation to perform such duties or exercise such functions for an unreasonable length of time shall operate to extinguish its claim to an abandoned roadbed or right of way, in favor of another company, or of the owner of the land from which such way was taken. Such exercise of legislative power is as legitimate and just as is the enactment of the general statute of limitations. *Smith v. Hall,* 103 Iowa, 95. In the exercise of this power, the Legislature, after the decision of the *Noll Case,* enacted chapter 65, page 59, Laws of the Fifteenth General Assembly, the substance of which was re-enacted in the present Code (section 2015), to which reference has already been made. By these provisions, as above noted, after a right of way has been abandoned by the first taker certain years of grace are given, in which another company may avail itself thereof, failing which the title acquired to such right of way is extinguished, and vests in the person or persons owning the tract from which it was taken. *Smith v. Hall, supra*; *Remey v. R. R.,* 116 Iowa, 133. After the passage of that act the railroad company which had formerly acquired the right of way in controversy did permit it to remain abandoned, unoccupied, unused, and unimproved for more than the statutory period; and thereupon, unless the statute is to be emasculated by judicial amendment, the owners of the original tract became vested with an indisputable title to this land. Of those owners, this plaintiff is one. The construction of the statute for which I contend was approved by this court, after prolonged and mature consideration, in *Remey v. R. R., supra*—a decision, the reasoning and philosophy of which are wholly discredited by the majority opinion in the case before us. The *Noll Case,*

which the Chief Justice makes a corner stone of his argument, was in the *Remey Case* shown to have been robbed of its authority as a precedent by the change in the statute to which I have called attention. That fact was emphasized both in the prevailing opinion, written by Ladd, C. J., and in the concurring opinion by McClain, J.; the former declaring that the new statute "has obviated the result of the decision in the *Noll Case,* by enacting that the right of way shall revert to the owner of the land out of which it was taken, rather than to the state, regardless of how acquired, when there has been eight years or more nonuser." In view of the recent date of this holding, I confess to some surprise to find a majority of the court giving its adherence to a proposition which in effect reaffirms the authority of the *Noll Case* and declares that the statute then in force, containing no provision for a reversion of an abandoned right of way to the landowner, is as to the question here in issue, "to all intents and purposes the same as section 2015 of the Code," which does contain such provision.

II. The point made in the majority opinion, that, as plaintiff claims under a deed describing his land as bounded upon one side by the outer line of the railroad right of way, he cannot claim anything beyond that line by virtue of the statutory reversion of title, and the further point that the reversion, if any, is to the original grantor, and not to his grantees of the tract on either side of the right of way, are both unequivocally disapproved in *Smith v. Hall, supra.* There a right of way had been granted (not condemned) through a tract of farm land. Later the owner conveyed to one grantee all the land on one side of the right of way, and to another grantee all the land upon the other side; the right of way being in each instance as clearly excluded from the grant as in the case at bar. The principal question presented by that appeal was whether, upon abandonment of the right of way, the statutory reversion inured to the benefit of the grantees of the divided tract, or to the original grantor. We there pointed out that, the land having been subjected to a

public use, "it was competent for the Legislature to say to
whom it should revert when abandoned," and that, applying
the clear and unequivocal language of the statute, the right
to the reversion followed the title to the tract from which the
abandoned way was originally taken, and that the original
grantor, in conveying the separated parcels of said tract,
"parted with whatever right she had to the reversion." It
does not clearly appear in that case under what form of deed
the title was acquired by the company, but we distinctly de-
clared that a railroad corporation's interest in its right of
way "is the same, whether granted or condemned." This
proposition was expressly reaffirmed in the *Remey Case*,
where it is said that, the land having been acquired by the
railroad company through the power of the state for a public
use, the reversion, in the absence of statute would be to the
state; and it is therefore within the power of the Legislature
to say whether such lands should be longer reserved for pub-
lic uses, or should be restored to private ownership, with the
tract of which it was originally a part. And this we again
declared was equally true, regardless of how the railroad ti-
tle was acquired. Unless, therefore, we are to overturn those
precedents, as well as the statute, it is of no moment what-
ever whether the conveyance to the company of the way in
controversy was by deed absolute or by condemnation. The
statute, having once run, is an insurmountable bar to the as-
sertion of any right under such conveyance, regardless of its
form or substance.

III. That the conveyance from John Mock was for a
right of way is not, in my judgment, negatived by the de-
fendant's pleading to which the demurrer was sustained.
The copy of the deed set up as an exhibit professes to dis-
close only the "material part." Having thus brought the
conveyance into the record and having by the abstract ex-
hibited to this court only an incomplete statement of its con-
tents, I think it was competent for the appellee to show by
an amended abstract, as he has done, that the deed contained
a provision expressly limiting the grant to right of way pur-

poses.   Moreover, the appellant, over and over again, in ab-
stract and in argument, concedes, in effect, that such was
the nature of its title.   In treating the deed as absolute in
form, and measuring the appellant's right on that basis, we
are giving it more than it has asked at our hands.

IV.· While fully satisfied that the case is governed by
the statute, there are certain general principles to which I
desire to call attention.   There is a fundamental and inerad-
ical distinction between a fee-simple title in lands held by
a corporation for public or *quasi* public uses, and a fee-simple
title to lands held by an individual for private uses.   Of the
cases usually cited· to uphold the contrary doctrine, an ex-
amination will reveal that most of them are based upon con-
stitutional or statutory provisions, or upon extraordinary
grants of power contained in special charters, which have
never obtained in this state.   A grant or conveyance to a cor-
poration is, as is well said by the Chief Justice presumed to be
for a purpose for which it is authorized to hold real estate.
Stated in the language of the distinguished jurist and law
writer Chief Justice Redfield, "A contract to convey land
for a particular use or to a party having capacity to acquire
a certain estate in land for a particular use, must of neces-
sity carry the implication of such limitation upon the estate
to be conveyed."   *Hill v. R. R.,* 32 Vt. 74. · To hold that the
fee in land conveyed to a railroad company for its right of
way is thus impressed with a public use, and that when aban-
doned it is subject to reversion, as a matter of common right
or of statutory direction, is not in the least inconsistent with
the existence of power in the company to take lands by way
of donation or in payment of debt, or for any ordinary com-
mercial or business purpose consistent with the purposes for
which the company is organized, and convey them again in
fee simple for private uses.   *Hill v. R. R., supra.*   Such
power is often essential for the accomplishment of the public
purposes which railroads are designed to promote.   Title to
such lands is acquired by the free and voluntary act of the
individuals from whom the conveyance is received.   But the

individual who conveys land for right of way acts under a
large measure of compulsion. He cannot prevent the ap-
propriation of his property. His only choice, as is pointed
out by Judge Redfield, is to say whether he will fix the price
of the dismemberment of his lands by agreement with the
company, or have the same fixed by a jury. The only possi-
ble justification for thus holding the landowner at bay, and
exacting title from him by conveyance or condemnation, is
found in the theory that such appropriation for railroad pur-
poses is a matter of public benefit, to which individual right
must yield. It follows, therefore, as an inevitable conclusion,
that when the public use is permanently abandoned, and the
public benefit which was the consideration for the transfer of
title ceases to be served or promoted, the right and title of the
corporation ceases therewith. Moreover, lands obtained for
right of way are to be distinguished from other lands ob-
tained by the company, in this: the latter, as a rule, are ob-
tained in such shape and form that they may ordinarily be
bought, used, and sold for general purposes without impos-
ing any special hardship upon other proprietors or upon the
public, while the right of way consists of a narrow strip ex-
tending over and across lands devoted to agricultural, resi-
dence, and business uses. Much of this strip, when aban-
doned, is wholly valueless to the company, except as a men-
ace by which the owner of the land thus burdened may be
induced or compelled to make terms for the removal of the
incumbrance. To say that when the right of way is aban-
doned for railway uses, the company may retain it or dispose
of it to others for uses of a merely private character, is to af-
firm a proposition at variance with every well-settled rule of
law governing ownership of lands by *quasi* public corpora-
tions, and open the door to the most grave abuses. Suppose,
for instance, that, in contemplation of constructing a railroad
across the state, a corporation lays out its line, and opens ne-
gotiations with the landowners to adjust the right of way.
The owners, knowing their inability to raise any effectual
objection, make conveyance by deed of a strip one hundred

feet wide and hundred of miles in length, stretching out across lands used in all the various ways known to modern life and business.    After having thus obtained its title for public uses, the company changes its plans and abandons the enterprise entirely, or concludes to build its road upon an altogether different route.    Would this court for a moment tolerate a claim upon such company's part of right to turn that right of way into an elongated farm, or private park, or game preserve, or devote it to any other purpose foreign to or destructive of the public purpose for which, and for which alone, the authority to take and hold the right of way was given by the statute?    Would the owner of land thus bisected and injured have no remedy for the wrong done him, except such as might or might not be sought by the state in *quo warranto?*    If such abandonment of the public use be prolonged for an unreasonable period, is there any good reason why the Legislature which granted the power to "take and hold" the land for such uses may not withdraw the authority, and restore the land to the several tracts from which it was taken, just as it has attempted to do in our statute?    If any such reason exists, it has not been suggested.    Of the many authorities which uphold the view that a fee-simple title in lands for railroad right of way is thus qualified, I will call attention to two typical cases—one from England and one from the United States (*Norton v. Railroad,* L. R. 9 Ch. Div. 623; *N. Y. C. & H. R. R. C. v. Aldridge,* 135 N. Y. 95 (32 N. E. Rep. 50, 17 L. R. A. 516)—in both of which jurisdictions railroad companies are held to obtain a fee-simple title in a right of way.    In the *Norton Case* the company obtained its right of way by conveyance.    For some years it had maintained a fence or hedge several feet within the outer limit of the land covered by its deed, and left the strip outside of the hedge unused.    The plaintiff, who was in possesion of the adjacent land, erected a building on his own premises, with windows overlooking the railway; and the company put up a blind or boarding to obstruct the view from said windows —an act which, in that country, would have been lawful in

an ordinary fee-simple proprietor of land so situated. On
suit brought to prevent such obstruction, it was held that,
notwithstanding the company held the fee-simple title to its
right of way, it held such title "in that qualified manner in
which land taken for particular purposes is taken," and that
"they [the company] had only a right to the fee simple of
the land for the purpose for which they acquired it, namely,
the construction and perpetual working of the railway," and
therefore could not rightfully obstruct the plaintiff's win-
dows, except as such effect might incidentally follow from
the use of the way for legitimate railroad purposes. Concern-
ing the disputed strip outside of the hedge, but within the
limits of the grant to the company, it was also held, that the
company had manifested a purpose to abandon that part of
the way outside of the hedge, and that, such abandonment
having continued for a period of ten years or more, the land
vested in the adjoining owner. In the Aldridge Case, the
owner of land bordering on the Hudson river conveyed to the
railroad company a right of way in fee along the river shore.
Subsequently a dispute arose as to whether the railroad com-
pany or the landowner was entitled to a patent to certain
lands in the river bed—a right which, under a statute of that
state, could not be held by or reserved in any person except
the riparian proprietor. It was therefore essential for the
court to say whether the company, as fee owner of the right
of way which seperated the land of Aldridge from the river,
was a riparian owner, or whether the riparian rights and
privileges remained in Aldridge, as the owner of the land
from which the right of way had been taken. In sustaining
the claim of the landowner, the court, speaking by Peckham,
J. (afterwards transferred to the Supreme Court of the Uni-
ted States), declares that although the railroad company re-
ceived title to its right of way "in fee simple by voluntary
grant of the former owners, and by the provisions of the stat-
ute, it holds such real estate and can use it only for the pur-
poses expressed in its charter—that of the maintenance, con-
struction, and accomodation of the railroad. For this pur-

pose only can the land be used, and, although the title granted
to the company is a fee, we think the grantor did not thereby
cease to be the owner of the upland, within the meaning of
the statute.   The conveyance to the railroad of the strip in
question is, in its effects, entirely unlike the conveyance to a
private individual in fee simple.   In the latter case it may
well be that the grantor of even so narrow a strip would lose
his character of riparian owner, and the grantee would ac-
quire it.   But when we consider the purpose of the convey-
ance to the railroad, and the limitations to its use which the
statute itself placed upon the company, it becomes entirely
plain that the grantor ought not to lose his character of ri-
parian owner where he retains the property immediately ad-
joining that which he conveys."   The failure of the majority
opinion to recognize the distinction thus clearly stated by
Judge Peckham, and the assumption that a conveyance of a
right of way in fee to a railroad company vests the grantee
with the same unlimited right in the permises which a simi-
lar conveyance for private uses would vest in an individual
purchaser, lead, in my judgment, to a radically wrong con-
clusion.

The judgment of the district court should be AFFIRMED.

McCLAIN, J., concurs in the foregoing dissent.