Justices, &c. Pike County *vs.* Griffin & West Point Plankroad Co.

of competent jurisdiction to be set aside by the vague and uncertain recollection of the Constable.

We are all of the opinion, that the judgment must be reversed, and the *certiorari* sustained.

---

No. 84.—The JUSTICES OF THE INFERIOR COURT OF PIKE COUNTY, plaintiffs in error, *vs.* THE GRIFFIN & WEST POINT PLANK ROAD Co. defendants.

[1.] Grants from the Legislature to a company, in derogation of common right, are to be strictly construed.

[2.] A Plankroad Company under authority from the Legislature, to construct a Plankroad between two designated points, have no right to appropriate to that purpose, the whole of a public highway, without express authority in their charter.

[3.] Where the charter authorizes the company to locate their road upon any part of a highway, where it becomes necessary to do so : *Held,* that in such a grant, the Legislature did not intend that they should be authorized to appropriate the whole course of any highway.

[4.] Such a grant, whilst it is to de strictly construed, is to be interpreted so as to secure to the company beneficial results. The necessity contemplated by the Legislature, is not such a necessity of using a highway, as without such use would defeat the enterprise, but a reasonable necessity. As, for example, : to avoid constructing a costly bridge over an almost impassable swamp, or an inconvenient, wide departure from the proper direction of the plankroad.

[5.] The company are to judge of the necessity in the first instance, subject to be finally controlled by the action of the Courts; and whether the necessity exists or not, is a question of fact to be determined on the production of evidence.

[6.] In cases where such necessity exists, the company are bound by their charter to pay the damages resulting from the appropriation of the highway, to be ascertained in the manner pointed out in the charter, and any departure from the directions therein contained, or fraudulent or collusive acts on the part of the company in relation to the assessment, will vitiate the whole proceeding, and subject them to injunction.

[7.] *Held*, that under the charter of the Griffin & West Point Plankroad
Company, and under the general law, the Inferior Court of Pike County,
may rightfully institute suit in Equity, to restrain them from a violation of
their charter.

In Equity.  Application to Judge STARK for an injunction.

The Justices of the Inferior Court of Pike County, for the use
of the people thereof, applied to Judge *Stark* for an  injunction
against the Griffin & West Point Plankroad Company.

The bill alleges that the company had proceeded to seize and
appropriate to their use, the public road, leading from the City of
Griffin, to the Flat Shoals on Flint river, passing through three
militia districts in the said County of Pike; that by fraud and
combination with the Commissioners of Roads in the said districts,
the said Company had procured the appointment of Commission-
ers, as provided by the terms of their charter, who had assessed,
in one of the districts, no damages or compensation,  and in the
others, merely nominal compensation for  the use of a  public
road as the site to be occupied by the plankroad; that the Com-
missioners of roads in two of the districts had, in accordance
with the award of the arbitrators, proceeded to execute a fee
simple title to the public road,  sixty feet wide to the said Com-
pany.   The bill charges that, there was no necessity for the said
Company to appropriate and occupy the  said  public road with
their plankroad; and that by so doing, they have violated the pro-
visions of their charter, which the bill  alleges, confers no such
right.

The bill charges, in order to show that  no such necessity
exists, that Mr. Heely,  the contractor, had proposed to the
said company to build  the road for $300 less per mile,  if they
would allow it to be laid down in a site different from that of the
public road.

The bill charges, that the acts  and doings of the said compa-
ny in appropriating the public road, &c. &c. tends to the  injury
of complainants, as guardians of the interests of the people of
Pike County,  inasmuch as if said company shall be allowed so
to do, they  will be compelled, in  obedience to  the wishes of

a large majority of the people of the County, to open a new road, along and near the site of the Flat Shoals road, thus occupied by by the plankroad, and that such public road will cost the County of Pike not less than six thousand dollars.

The bill prays that the company may be temporarily enjoined from proceeding with the construction of said plankroad, on the site of the public road, until they give adequate security to complainants, to pay such damages as may be assessed against them; that they may be enjoined until their right to appropriate the public road, is judicially decided. The bill also prays a perpetual injunction against the said company taking and using the Flat Shoals road; that the deeds executed to the said company by the Commissioners of Roads for the militia districts through which said road passes, may be delivered up and cancelled; that the said company may be decreed to pay complainants such damages as by them may have been sustained, as the guardians of the pecuniary interests of Pike County.

Judge *Stark* refused to grant the injunction, whereupon solicitors for complainants excepted.

S. T. BAILEY & W. W. ARNOLD, for plaintiffs in error.

McCUNE, for defendant in error.

*By the Court.*—NISBET, J. delivering the opinion.

Our duty in this case is, first to determine whether, according to the case made in the bill, the Plankroad Company in locating and laying out their road, have acted within their charter? In doing so, we are to hold the facts stated in the bill to be true. It was charged in the bill, and I believe was admitted in the argument, that they had located their road on one of the public roads of the County of Pike, through the whole extent of that road from the City of Griffin to the County line. That public road, it is charged, was laid out and constructed under the law, by the County of Pike, and at the expense of that County. It is a highway, and was at the time of locating the plankroad upon it,

used by the people at large as such, and was of great public utility. Our first inquiry is this, have this company the right to appropriate the highway to the purposes of the plankroad at all? Our second inquiry, if they have, is, to what extent have they this right? The bill does not question the power of the Legislature to grant to this company the use of the highway for their road. We are not called upon, therefore, to consider this power in the Legislature ; if we were, I should not be prepared to deny it. It would seem, that the Inferior Court, acting under authority of law, has the power to discontinue, as well as to lay out and open public roads. The Legislature may do the same thing acting directly. The discontinuance of a public road, is the exercise of the same power which is exerted in granting its appropriation to another. The Legislature may revoke the easement, since it is one which appertains to the public at large, and in which no individual or corporation has a vested right. The whole people are represented in the Legislature, and the act of the Legislature is, therefore, the act of the public, to whom the easement appertains. It is the legitimate exercise of the sovereign power See 11 *Vern. R.* 198. 4 *Humph. R.* 315. 2 *Mass.* 143. 10 *Johns. R.* 389. 1 *Caines' R.* 177. If the Legislature may grant the whole of an existing highway to a company upon which to build a plank road, it may grant a part, or it may authorize its obstruction at certain points on it. Whether the Legislature can grant away a public highway, without providing for compensation to the County at whose expense it was opened, is also a question not made in this record ; for the charter to this company requires them to make compensation for so much of the public road, as it may be found necessary for them to use.

The charter authorizes the company to construct their road on the public roads. Of this we have no doubt. The act authorizes the building of a plankroad from Griffin to West Point, and provides for the right of way over the lands of individuals, and the means of assessing the damages, in case of disagreement between the proprietors and the company. In the 6th section it is declared, " That whenever it shall become necessary for said Plankroad Company to use any part of a highway for the construction

of said plankroad, the Commissioners of Roads of the militia district in which such highway is situated, or a majority of them, may agree with said company for taking and using such highway for the purposes aforesaid." It then proceeds to direct how the damages shall be assessed in case of disagreement between the company and the Commissioners of Roads, and to whom they shall be paid, and how appropriated. Here is an express recognition of the right of the company to use the highway. The 6th section, indeed, conveys to the company a grant of the easement. But to what extent ? How much of the highway may they use ? Clearly, not the whole. It was manifestly not the intention of the Legislature, to discontinue any public road, by substituting a plankroad. They did not intend to authorize the company to obstruct any road throughout its entire course, and deprive the public of its use.

[1.] No right can be given to a corporation by implication. A grant to an individual, or company, which is in derogation of common right, is to be strictly construed. Even where there is ambiguity in a charter as to the extent of the powers conferred, the doubt shall operate in favor of the public and against the grantee. See *ante* the case of *R. McLeod et al. Trustees, &c. vs. Henry K. Burroughs, defendant.*

[2.] Here there is no ambiguity about the question, whether they intended the company to appropriate and destroy a public road. They, beyond all shadow of doubt, did not so intend. If, as to the construction of grants ordinarily, which are in derogation of common right, nothing passes by implication—if companies in the use of special privileges, are held stringently within their charters, with accumulated strength of reason, these rules apply in this case. The easement in the highway, appertains to the public at large—in it the people of Pike have a special interest—an interest which amounts to an equitable property, springing from the price which they paid for its construction. They and the public at large enjoy the easement under a legislative grant. The revocation of this grant cannot be presumed. Nothing short of a clear and unqualified expression of the legislative will, can authorize a Court to recognize such a

grant. When I speak of the powers of this incorporation being in derogation of common right, I do not mean to say that to build a plankroad and charge toll thereon, is a common right. I know that it is not, and that it exists only by authority from the Legislature.

But I do mean to say, that a grant of the right to appropriate to the purposes of a plankroad, an existing public highway, is a restraint upon common right—a limitation of a privilege which by existing law, belongs to all the people in common, to wit: the privilege of passing upon the highways of the State in pursuit of business or of pleasure, free of charge. That clause of this charter which relates to highways is to be strictly construed. By the limitation of the use of the highway to cases of necessity, all idea of a grant of the right of using the whole highway is excluded. The Legislature say, that whenever it shall become *necessary* for the plankroad to use *any part* of a public highway, &c. They speak of a *necessity* to use not *the whole*, but *any part.* As a part is less than the whole, where the grant is limited to a part, it can not extend mathematically, or legally, to the whole.

[3.] It is manifest, farther, that the Legislature did not intend that this company should obstruct the highway, except in cases of necessity, much less occupy the whole of it; in this, that the Act does not permit it to cross any highway, but upon condition that it does not obstruct it. It grants the power, " if need be, to conduct the plankroad across any public road or highway, and across any stream or watercourse that may be across the route : *Provided,* said company shall so construct their plankroad across all public roads, as not to obstruct or injure the same." *Acts of* 1849–'50, *page* 228. Were there, in fact, a necessity, such as I shall hereafter define, to build this plankroad upon the whole course of a highway, I should unhesitatingly hold, that the company could not use it to that extent. Because it is obviously not the intention of the Legislature, drawn from the charter, to authorize the suppression or discontinuance of a highway. It is our judgment, therefore, that the injunction ought to have been granted, upon the ground that the company have exceeded their power under their charter, in laying out their road upon one

Justices Inferior Court, *vs.* Plankroad Company.

of the public highways of the County of Pike, throughout its entire course. Whether the fact be true, as charged in the bill, that they have so laid out their road, is a question to be determined at the hearing.

[4.] The bill, however, goes farther still, and avers that there is no necessity for occupying *any part* of the highway, and that on that account the company have exceeded their powers. This allegation makes it necessary to settle, with as much precision as we can, the kind of necessity contemplated by the Legislature. The grant is, that when it *shall become necessary*, the company shall use the highway. When does it become necessary, in the sense of the word, as used in this charter? The word in its usual acceptation, in its familiar and commonly received signification and import, is as little doubtful as most words. Yet, in its use, it has more than one meaning—there are, in its common use, at least shades of variation in its meaning. Perhaps I would be justified in saying, that the word is used amongst men, to express degrees of indispensableness, as well as that which is absolutely indispensable.

Now, we are to give a reasonable interpretation to the words of *this clause*, having reference to the subject matter, and also to other provisions. The subject matter is the grant of the road privilege to the company. It is declared in the charter, that they shall have the right to construct the road between two given points, to wit: Griffin and West Point, considerably remote from each other. The inference is, that they are empowered to run this road, in the direction of the terminus from the starting point, in the route found by survey the most convenient and best adapted to the work. If in pursuing this route, it becomes necessary to use any part of a public highway, they are authorized to use it. Used as the word *necessary* is, in reference to the objects of the law, and in connection with its other provisions, such interpretation is to be given to it, as will make the grant which it conveys available to the company. It is not to be so strictly construed as to defeat beneficial results to them. We consider that the necessity contemplated by the Legislature, is not an absolute, insurmountable necessity. For example: they did not

mean that the company should use the highway only in case there was no practicable passage but upon the highway, at any one or more points, for a plankroad, between Griffin and West Point. They did not mean to confine their use of the highway, to cases where, if they did not use it, the enterprise must of necessity fail. If between Griffin and West Point, there lay a mountain barrier, practicable for a road at a single passage, and that occupied by a highway, the use of that passage would be a necessity, without which, the whole enterprise must needs fail. We do not believe that the Legislature meant that extreme necessity. We conclude that it means, what I can no otherwise designate, than by calling it a reasonable necessity. Thus if in the route of their road laid out in the direction of its terminus, it becomes necessary to appropriate a part of the highway, in order to avoid bridging at great expense, an almost impassable swamp, or embanking a deep and wide ravine, or in order to prevent a wide and inconvenient departure from the proper direction of the road, and in all other cases falling within the reason and spirit of these illustrations ; the Legislature, no doubt, intended that they should use it. It designed to give to the company such reasonable accommodation in this regard, as would facilitate their enterprise, and which at the same time, would not to any great extent, obstruct the highway. And when obstructed, the compensation which they were required to make, was intended to enable the County, without expense, to open a new highway to the extent of the obstruction, and keep up the facility of communication upon it.

[5.] Of this necessity, the company must be the judge in the first instance, subject, however, to the final judgment of the Courts of Justice. They must proceed to use such parts of the highway, as under the views we have presented of necessity, they may think within the legislative grant, but at the peril of being arrested and finally controlled by the action of the Court. Whether any appropriation of it, is or is not necessary, is a question of fact, to be determined upon proofs, according to the circumstances of each case. The bill denying any necessity whatever, to use any part of the highway, and even insisting that the

plankroad could be laid out elsewhere, with equal convenience and less costs, we have no alternative but to allow the injunction for this reason also.

[6.] The complainants farther charge, that in the assessment of damages, they have not complied with their charter. This charge applies, but not with equal force, to all the districts. It is farther charged in relation to some of the districts, that the Commissioners of Roads colluded with the company, and gave the right of way on the highway, without assessment, and that thus the County was deprived of the compensation which the charter gives them, and that, in relation to others, an appeal was prevented from the award of the commissioners, by fraudulent representations and practices on the part of the company—that notice of the time and place of making the assessment, was not given according to the charter—that the commissioners were not disinterested persons, and that in no case was the return of the assessment according to the charter, in this, that the benefits and damages were not stated. If these things be so, the charter has been violated, and the complainants are entitled to an injunction, and to be heard on the facts. It is not necessary, in minute detail, to follow the allegations of this bill, as to each of these districts, separately. It suffices to say, that fraud is charged upon the company, as to all of them, either in preventing an assessment, or in preventing an appeal. The charter contemplates an assessment, only when the company and the Road Commissioners fail to agree upon the amount of the damages. It is, therefore, competent for them to agree, and if the conduct of the parties is fair, free from fraud and *bona fide*, the agreement is binding and without appeal. The charter requires that the commissioners shall be disinterested freeholders. If they are not, that fact will invalidate their action. It requires that they shall be sworn; they must be sworn. Five days' notice to the Commissioners of Roads is required to be given of the time and place of making the award. This notice must be given. The charter requires that the Commissioners shall make a return of their award in writing, specifying therein respectively, the

amount of damages and benefit, which may result from the construction of the plankroad on the highway.

This they must do. The Legislature did not intend that this assessment should be a matter of form, or that the benefits and damages should be imaginary values, to exist only in verbal reckoning. They intended that they should be found in dollars and cents—should be respectively stated, and be maintained as a memorial, by being filed in the Clerk's office of the Superior Court; and that the public and the company should thus have the means of knowing what was the action of their agents. This requirement was intended to hold the commissioners to a strict accountability for the execution of their trust, by requiring them to record in detail, their judgment—and making it open to the inspection of all men. From the award of the commissioners an appeal lies in behalf of the company and of the Road Commissioners. This right of appeal may not be defeated, and must be held inviolate. In short, this company is bound, as well as all others, to pursue their charter. Neither we nor they can sit in judgment on the reasonableness or expediency of its requirements. They are bound to conform to the legislative will, and it is our duty to constrain them to a strict conformity. In thus plainly speaking, I am not to be understood as censuring the company. If the facts be true which the bill states, they would be fit subjects for judicial censure. Our judgment is founded on the case made in the bill. It may be true or not; we are to take it as true, for the purposes of this opinion. Nor are we to be understood as being at all unfriendly to the enterprise of this company. I speak what I know to be the opinion of each member of this Court, when I say that as citizens, we most cordially approve it, and rejoice to see that this kind of improvement is likely to obtain to a great extent in our State. And farther, that the public spirited citizens who projected it are entitled to the thanks of the State, for being among the first to move in a work which promises great good to the republic. But we need scarcely add, that it is our earnest endeavor to hold the scales of justice steady, and as Judges, to know neither men nor corporations, Kings nor Kaisers.

In the 7th section it is provided that no difference or disagreement between the company and any landholder, shall operate by injunction or otherwise, to suspend the progress of the said work, but the same shall be continued without interruption, on adequate securety being given by said company to the landholders, to pay such damages as shall be assessed in manner aforesaid. This clause extends to the Commissioners of Roads as well as to landholders, by the operation of the 8th section. If, then, in any instance of disagreement between the company and the Commissioners of Roads about the damages, the company shall give the bond required, *eo instanti* and *ipso facto*, the injunction is dissolved.

The complainants in this bill having stood by and permitted this company to construct a part of their road, without moving to enjoin them from so doing, the judgment of this Court awarding the injunction, does not extend to so much of the plankroad as was in fact built before the application for an injunction was made to the Circuit Judge.

[7.] The company having, as we hold, according to the allegations in the bill, violated their charter, the next inquiry is, can the Inferior Court of the County of Pike, institute suit by injunction to restrain them. And first, is it competent for them to sue by injunction, to restrain them from appropriating the *whole* of a public highway, for the purposes of the plankroad?

The Inferior Court have judicial functions. It is not necessary to inquire particularly what they are. They also have ministerial functions. They are the agents of the County for many purposes. They are authorized by law to lay out and open roads—to appoint commissioners of roads in the several districts of the County. They are the supervisors and managers of the property of the County—its Court-house and jail, and public bridges, for example. They impose the taxes authorized by law for County purposes—appoint the County Treasurer, who is amenable to them. Through him they keep all the funds of the County—appropriate and disburse them. These powers characterise them as agents ; and for the purposes of their agency, they are collectively a corporation with limited powers. The

right of such a corporation to sue, whether they are expressly clothed with that power or not, will not be questioned. It is incidental to their agency.

The easement in a public road, is a property in equity, belonging to the County at whose expense it is constructed. It is subject to use by the public at large—hence, as I before have said, it appertains to the public. Yet this is not inconsistent with the idea of an equitable interest or property in the County. The public use may be considered as a limitation upon that property. The interest which a County has in a public highway, springs equitably out of the fact, that that County, and not the whole public, have paid the costs of construction. The right to lay out and open the road, is derived from the Inferior Court, acting under the Legislature. The easement is a legislative grant. The people of the County make the grant available by the outlay which is necessary to open the road, and so long as the grant is unrevoked, the road, that is the easement, is an interest or property in the County. The Inferior Court are the depositories of this property, as well as any other. It is their duty to protect it, as much so as to protect the Court-house, and if it is violated, they have the right, as the agents or trustees of the County, to go into a Court of Equity for redress. Secondly, have the Inferior Court the right to sue in Equity, by injunction, to constrain the company to pursue their charter in the assessment of damages? The charter, as well as the general law, settles this point. By the general law, the damages would be payable to the County Treasurer, and be subject, in his hands, to the order of the Inferior Court. They are the County agents for the receipt and disbursement of it. By law, no one else has the control of the fund when in hand, and no one else can enforce that provision of the charter which requires the company to pay it. As the fiscal agent of the County, in their character as a corporation, they are authorized to constrain the assessment, and to enforce them to make it in pursuance of the charter. But the charter itself, in so many words, makes the Inferior Court the agent of the County, to receive and apply the damages, for it directs it to be paid to them, and to be expended in improving

the highways of the district for which they have been assessed. Such an agency implies the power to compel 'the assessment, to prevent the company from depriving the County by fraud, or by violations of the charter, of it. The right to sue is incidental to these powers. *Pamphlet,* 1849–'50, *p.* 229.

Let the judgment be reversed.