THE AMERICAN MORTGAGE Co. OF SCOTLAND *v.* TENNILLE.

1. Under the act of February 28th, 1877, providing that the State of Georgia will not consent to foreign corporations owning 5,000 or more acres of land in this State unless they shall become incorpo-

rated under the laws of Georgia, the State alone can make the question as to the right of such corporations to hold said land.

2. A motion to dismiss an affidavit of illegality was rightly denied when at least one of the grounds thereof presented a legal defence against the further progress of the execution.

March 23, 1891. Argued at the last term.

Illegality. Practice. Foreign corporations. Before Judge GUERRY. Quitman superior court. March term, 1890.

Reported in the decision.

W. E. SIMMONS and W. C. WORRILL, for plaintiff.

W. D. KIDDOO, by brief, for defendant.

LUMPKIN, Justice.

Tennille executed and delivered to J. K. O. Sherwood a promissory note, and at the same time, in order to secure the same, made and delivered to said Sherwood a deed to certain land. Sherwood transferred the note and conveyed the land to the American Mortgage Company of Scotland, Limited, who sued the note to judgment in the superior court of Quitman county, and an execution issued thereon was levied upon the land described in the aforesaid deed, the mortgage company having previously filed in the clerk's office a deed purporting to reconvey the land to said Tennille for the purpose of making this levy. To the levy of the execution Tennille filed his affidavit of illegality, containing several grounds, one of which was as follows, viz. that "the said plaintiff was a foreign corporation, has never been incorporated by the laws of Georgia, and owned more than 5,000 acres of land in said State (so far as to claim the same and hold deeds thereto), in conflict with and against the laws of said State, and therefore could not hold the title to lands or convey the same to the defendant legally." The defendant served on the plaintiff a notice to produce at the trial a number of papers, and among them, the charter of the

plaintiff and deeds from fourteen persons to Sherwood, and from Sherwood to the plaintiff, covering various lands in Randolph and Quitman counties; the use intended to be made of said deeds being to prove the ground of illegality above quoted. The court held that said charter and these deeds should be produced, and upon the plaintiff's failure to do· so, ordered the levy of the execution to be dismissed. We can see no error in requiring the production of the charter, as it might contain evidence supporting one of the grounds of the illegality. The main question, therefore, upon which this court is asked to pass, in this case, is whether or not the ground of illegality setting forth plaintiff's inability to hold land in excess of 5,000 acres is good in law, and consequently whether or not the plaintiff should have been required to produce said deeds.

1. It seems to be well-settled that, in a case of this kind, the State alone is authorized to assert her policy in prohibiting foreign corporations from holding five thousand or more acres of land in Georgia, and that individuals have no right to make the question in controversies with each other. Numerous decisions may be found to the effect that, where a corporation acquires or uses land to any extent, or for any purpose, not authorized by its charter, the question of its right so to do cannot be made by an individual in a legal controversy with the corporation, or with those claiming under it, but must be raised directly by a proceeding instituted for that purpose by the State wherein such corporation is exercising such powers *ultra vires.* Some of these decisions were made by the courts of the States in which the corporations themselves were created, and others in States outside of which the corporations involved had been chartered. None of them are directly in point as to the precise question made in the case ·now before us, because the disability of the

corporations arose under the provisions of their own charters. They are referred to merely to show the trend of judicial opinion on this question. These cases are so numerous and the doctrine they establish is so well-recognized, we deem it unnecessary to cite them by name. The following language, used by Judge Dillon in his great work on Municipal Corporations, has some bearing on the question now being considered: "Whether a municipal corporation, with power to purchase and hold real estate for certain purposes, has acquired and is holding such property for other purposes, is a question which can only be determined in a proceeding instituted at the *instance of the State*. If there is capacity to purchase, the deed to the corporation divests the estate of the grantor, and there is a complete sale; and whether the corporation, in purchasing, exceeds its power is a question between it and the State, and does not concern the vendor or others." 2 Dillon on Mun. Corp. (ed. 1890), §574. We have been able to find some cases directly in point. In that of Barnes *v.* Suddard, 7 N. E. Rep. 477, it was held that, where a foreign corporation had power to acquire real estate so far as necessary for its business, its acquisition of realty cannot be assailed in a collateral proceeding as an act *ultra vires*. It appears from an examination of that case, that in Illinois foreign corporations had the same rights to own and hold real estate as did domestic corporations of that State, and the case turned, not upon the charter powers of the corporation, but upon its right under the Illinois law to hold land. The Pennsylvania act, approved April 26th, 1855, forbade any foreign corporation to acquire and hold real estate. Notwithstanding this statute, it was held, in the case of Hickory Farm Oil Co. *v.* B. N. Y. & P. R. Co., 32 Fed. Rep. 22, that a deed of conveyance of land to such a corporation was not void, but passed the title, and that

the corporation held the land subject to the common-wealth's right of escheat; also that the commonwealth alone could object to the legal capacity of the corporation to hold real estate. In support of this opinion, Bone *v.* Canal Co., 5 Atl. Rep. 751, and R. R. Co. *v.* Lewis, 4 N. W. Rep. 842, are cited. Another case holding the same way is that of Carlow *v.* Aultman & Co., decided by the Supreme Court of Nebraska, and reported in 44 N. W. Rep. 873. An act of Nebraska passed in 1887 provided that no non-resident alien foreigner, nor any corporation not incorporated by the laws of that State, should acquire or own, hold or possess any real estate in the State of Nebraska. While this law was in force, Aultman & Co., a foreign corporation, purchased land in that State at a judicial sale, and it was held that this corporation's title was valid against every one but the State, and could be divested only by proceedings brought by the State for that purpose. These foreign corporations, it seems, have been treated as aliens were in England as to purchasing and holding real estate. By the common law, while an alien might purchase, he could do so only for the benefit of the king, and the king was entitled to land purchased by him by virtue of his prerogative upon "office found," and accordingly it was held that, unless the proceeding of "office found" was perfected, an alien had the power to hold and convey the land *inter vivos.* 1 Devlin on Deeds, §§124, 125. It therefore seems clear, in view of the cases cited and the common law foundation upon which the principle governing them is based, that the doctrine is thoroughly established in our American States, that the right of foreign corporations to purchase or hold lands in excess of the authority conferred either by their own charters or by the laws of the State in which such purchase is made, can only be questioned by the State itself in which such

land may be situated. It follows, of course, that the defendant in this case had no right whatever to raise the question made in the ground of this illegality hereinbefore set forth. And that being true, the production of the deeds called for was unnecessary and useless, because the ground of illegality in support of which it was sought to introduce these deeds presented no legal reason for interfering with the progress of the plaintiff's execution.

2. Another ground of the illegality alleged in effect that the deed purporting to be from the plaintiff to the defendant in execution, which had been filed in the clerk's office, was no sufficient deed, and would not convey title out of the plaintiff to the defendant, but would only throw a cloud upon the defendant's title and cause the land to sell for less than its true value. If these assertions are true, they amount to a good ground of illegality. It may be that such ground is not set forth with sufficient clearness, but as there was no special demurrer or objection to it because it was wanting in distinctness or fullness, but only a general motion, in the nature of a demurrer, to dismiss the affidavit of illegality, the point was not rightly made to the court below as to the insufficiency of this ground, and the judge therefore properly refused to dismiss the affidavit of illegality as a whole. If this ground failed to set forth the reasons why the deed referred to was insufficient and failed to convey title to the defendant, this distinct objection should have been made to it. We therefore leave the case to be tried again in the court below, with such additional light shed upon the law of the case as may be gathered from this opinion.

*Judgment reversed.*