## KOHLRUSS *v.* ZACHERY *et al.*

1. The general rule is that where a corporation has acquired possession and title to property, its right to hold it can not be questioned by a private citizen, but in such a case the State alone can make the question.
2. But where a State statute provides that corporations "shall make no contract, or purchase or hold any property of any kind, except such as is necessary in legitimately carrying into effect" the declared purposes of the corporation, the courts will not aid the corporation to compel specific performance of a contract for the purchase of land which it has no power under its charter to acquire and hold.
3. The evidence was conflicting on material questions of fact, and it does not so clearly appear that the contract sought to be enforced by the corporation was ultra vires as to require it to be so declared as matter of law, and to cause a reversal of the judgment refusing to grant an interlocutory injunction to restrain the corporation from proceeding under such contract. (Hill, J., dissents.)

MARCH 13, 1913.

Petition for injunction. Before Judge Hammond. Columbia superior court. December 10, 1912.

C. F. Kohlruss filed his equitable petition against Julian J. Zachery and the Harlem Oil & Fertilizer Company, and alleged substantially as follows: Petitioner is the owner and in possession

of 404¾ acres of described land in Columbia County, near the town of Harlem, which land is worth $15,000. Petitioner borrowed $2,300 of Mrs. J. B. Wright, and gave as security for the debt a deed to this land, under the provisions of § 3306 of the Code of Georgia, and received from her a bond to reconvey title to the land when the debt was paid. In September, 1912, petitioner borrowed from Zachery (acting, as now it is claimed, for the Harlem Oil & Fertilizer Company) the sum of $300, and gave his note therefor, payable sixty days thereafter. As security for the debt he assigned the bond for title from Mrs. Wright; and at the same time he was requested by Zachery to sign some other paper, the nature of which he can not state, as at the time he signed the paper it was in the town of Harlem and he was trying to catch a train then approaching, to return to Augusta. A copy of the paper was not given him. He had previously borrowed from Zachery $300, and had given his note therefor, and he was then required to assign his bond for title, and to sign another paper which was in the nature of a conditional sale of the land to Zachery, providing that if the note was not promptly paid when due Zachery was to have the right to purchase the land for the sum of $7,500, and to deduct therefrom an encumbrance for $3,000 due Mrs. Julia A. Hull, then holding the legal title to the land, which debt was subsequently taken up by Mrs. Wright. The paper further provided that in the case the $300 first borrowed from Zachery was not paid when due, the land should be surrendered to Zachery together with all debts due Kohlruss at that time. Zachery importuned petitioner to sell him the land, which he refused to do. On the 19th of November, 1912, the day on which the last $300 fell due, petitioner tried to reach Zachery at his office in Augusta upon two occasions, to pay the note, but failed to find him, his stenographer reporting that he was not in. Later in the day Zachery came to petitioner's place of business and said, "How about that note? I suppose I ought to have notified you, but I came around instead." Petitioner was ready then and there to pay the money, but did not have it in his pocket at the moment, but would get it at once and pay it immediately; and he asked Zachery where he could find him that day so that he might bring him the money. Zachery replied, "I don't know where I'll be. I don't want you to pay this money anyway. I want that land. I have told you that the amount (specified in

the transfer—$7,500) was all the land was worth." Petitioner replied, "I never will sell it." Zachery told petitioner he did not know where he would be later in the day or at night. Petitioner then told Zachery that if he could not find him that night he would bring the money to Zachery's office the first thing next morning. This petitioner repeated twice, and understood Zachery to reply, "All right." The next day (November 20) he called at the office of Zachery to pay the note, but Zachery was not in. He again called there on November 21, to pay the note, but Zachery was not in. Being unable to find him in his office, petitioner, on the 22d day of November, 1912, went to the town of Harlem, where Zachery had a place of business, and tendered the money due on the note, which Zachery refused to accept. He again tendered the money on the 23d, which tender was refused. After this, and on the same day, one of petitioner's tenants on the land came from Harlem and informed him that Zachery had gone upon the land and informed the tenant that he was the "boss and the owner of said land," and said, "I have long wanted to get this land, and now I've got it." He added, if petitioner owed the tenant anything, he (Zachery) would pay it; that he proposed very soon to sow oats upon the land. Petitioner charges that Zachery deliberately absented himself on the day the note fell due, in order to prevent petitioner from seeing him and paying the note, and to defraud him out of his land. When he signed the last note for $300, he had full confidence in Zachery that he would not wrong or take advantage of him; and for this reason he did not take the precaution to read over the paper above mentioned. Before signing it there was nothing said about a conditional sale of the land in the event the note was not paid when due. There was no agreement as to what Zachery should pay for the land, and no thought of selling the land to Zachery. There was no mutuality of contract in reference to the sale of the land, etc. If Zachery should present the bond for title assigned to him and demand of Mrs. J. B. Wright a title to said land, which he threatens to do, he would acquire the title to the land, of the value of $15,000, for $2,300, and thus defraud petitioner out of many thousand dollars, and cause him irreparable damage, if an immediate remedy is not afforded. He makes a continuing tender to pay the amount of the note, and prays: that the defendants be enjoined from entering upon the land of ·peti-

tioner or exercising any acts of ownership over it, and from paying the debt due by him to Mrs. Wright and acquiring a conveyance from her; and that defendants be required to accept the money tendered in settlement of the note, and to cancel the same, and to reassign the bond for title held by them as security for the debt, and to produce and cancel any alleged conditional contract of sale of the land from petitioner.

The defendants by their answer denied most of the main allegations in the petition, and, among other things, averred: that on September 20, 1912, in Harlem, Ga., the Harlem Oil & Fertilizer Company advanced to the plaintiff the sum of $300 as part payment on the purchase-price of $7,500 of the land in controversy, and the plaintiff then and there conveyed all his interest in the land by written instrument, a copy of which is attached to the answer; that on the same day the parties entered into a written agreement (a copy of which appears in the opinion, infra) wherein it was mutually agreed that if plaintiff failed to repay the sum so advanced, in sixty days after the date of the contract, the plaintiff should sell to the Harlem Oil & Fertilizer Company, the land in controversy at the agreed price of $7,500. The plaintiff failed to repay or tender to said corporation the sum of $300 within the time named in the contract, "whereby all interest and equity of plaintiff in said land was divested, and vested in said corporation." The plaintiff having already conveyed to the defendant company his interest in the land and having failed to comply with the terms of the contract whereby a sale thereof might have been avoided and conveyance of such interest defeated, this defendant is now the owner and holder of said interest and entitled to the possession of the uncultivated part of the land, and, on January 1, 1913, will be entitled to the possession of the remainder of the land in controversy. Wherefore it prays, by way of cross-petition, that it be declared the owner and holder of the bond for title and all interest of the plaintiff thereunder; that, in case the court should hold that this defendant is not already vested with the title to the land, the plaintiff be required to specifically perform the contract embodied in the instruments above referred to.

In response to the answer and cross-petition the plaintiff alleged, that the written contract set up and relied upon by the defendants was void and wanting in mutuality, and was non-enforceable, be-

cause Zachery had no authority to execute the contract in the name of the corporation; and because the Harlem Oil & Fertilizer Company had no charter power to enter into said contract.

Upon interlocutory hearing the court refused an injunction, and the plaintiff excepted.

*William H. Fleming* and *Henry C. Roney,* for plaintiff.
*Hamilton Phinizy,* for defendants.

HILL, J. The controlling question in this case is whether the Harlem Oil & Fertilizer Company, a corporation, under the laws of this State, can have specific performance of an executory contract for the purchase of farm lands, where the charter of the corporation contains no express power to execute such contract or to acquire such lands. The contract referred to is as follows:

"State of Georgia, Columbia County. Received from the Harlem Oil & Fertilizer Company the sum of three hundred ($300) dollars, to be applied on the purchase-price of the following tract or parcel of land fully described in a bond for title given by Mrs. Nannie B. Wright to C. F. Kohlruss, dated June 19, 1912, provided said sum of $300 is not repaid to said Harlem Oil & Fertilizer Company within sixty days after date. It is agreed that if said sum is not paid in the above-specified time, the said Kohlruss agrees to sell to the Harlem Oil & Fertilizer Company, who agrees to buy, said tract of land fully described in said bond for titles, at and for the sum of seventy-five hundred ($7,500) dollars, to be paid as follows: The said Harlem Oil & Fertilizer Company agrees to assume a loan of twenty-three hundred ($2,300) dollars on said land, payable to Mrs. Nannie B. Wright, the sum of fourteen hundred and fifty ($1,450) dollars January 1, 1913, and the sum of thirty-seven hundred and fifty ($3,750) dollars January 1, 1914. All deferred payments to bear interest from January 1, 1913, at the rate of 8% per annum. It is agreed that all rents during the year 1912 are to be paid said Kohlruss, and the said Kohlruss shall pay all taxes on the property up to January 1, 1913. Possession of the uncultivated part of the property may be taken by the purchaser sixty (60) days after date, provided said sum is not paid, and the remaining part of said land on January 1, 1913. In witness whereof both parties have hereunto set their hands and seal, this 20th day of September, 1912.

"Signed, sealed and delivered
in the presence of:

"Dr. A. B. Martin.

"W. I. Lazenby, Notary Public, Columbia Co., Ga.

C. F. Kohlruss (L. S.)
Harlem Oil & Fertilizer
Co. (L. S.)
By Julian J. Zachery, Prest."

The material part of the charter of the Harlem Oil & Fertilizer Company is as follows: The petitioners seeking "the formation of a corporation to be known as the 'Harlem Oil & Fertilizer Company,' for the purpose of conducting for pecuniary profit the business of buying and selling, both in their own right and on commission, cotton, cottonseed, and all cottonseed products and farm produce of all kinds, coal, wood, timber, and lumber; to manufacture and sell cottonseed oil and all substances and commodities obtainable from cottonseed and other agricultural products; to purchase fertilizer ingredients, to make, mix, manufacture and sell fertilizers; to manufacture ice and sell the same; to establish and operate an electric-light plant and create motive power and electric light, both for the use of said corporation and for sale to others; and to establish and operate sawmills, and to manufacture lumber," it is ordered that said application be granted, and that the petitioners and their associates and successors be vested with "all the rights, privileges, and powers mentioned in said petition." It will be observed from reading the above language that the charter contains no authority or power on the part of the corporation to own farm lands, or to make any contract for the purchase or holding of such property. Our Civil Code, § 2823 (5), is as follows: "Corporations thus created may exercise all corporate powers necessary to the purpose of their organization, but shall make no contract, or purchase or hold any property of any kind, except such as is necessary in legitimately carrying into effect such purpose, or for securing debts due to the company."

The language of the statute just quoted is clear and plain. By its terms a corporation can make no contract or purchase or hold any property of any kind, except such as is necessary to the purposes of the organization. The declared purpose of the corporation is as set out in the excerpt from the charter above quoted. Was the purchase of the farm lands necessary in legitimately carrying into effect such purpose? Mr. Zachery, who was the general manager, president, and treasurer of the corporation, testified that he

wanted the land because "around an oil-mill there is a great deal of waste, and this tract was bought by me to fertilize it and bring it up to a high state of cultivation from the waste and fertilizer around the oil-mill." Owning a farm to fertilize it was not one of the necessary or declared purposes of the corporation. The necessary purposes of the corporation are enumerated in the charter. If the waste and fertilizer were valuable for the purpose named, it could be sold by the corporation. But it is argued that the State alone can make the question as to the right of the corporation to own and hold the land. This is undoubtedly the general rule. 10 Cyc. 1133; *American Mortgage Co.* v. *Tennille,* 87 *Ga.* 28-30 (13 S. E. 158, 12 L. R. A. 529), and cases cited; Hanson *v.*.Little Sisters of the Poor, 79 Md. 434 (32 Atl. 1052, and note in 32 L. R. A. 293); Zinc Carbonate Co. *v.* First National Bank, 103 Wis. 125 (79 N. W. 229, 74 Am. St. R. 845, and note); Anglo-American Land &c. Co. *v.* Lombard, 132 Fed. 721-722 (68 C. C. A. 89); South & North Ala. R. *v.* Highland Ave. & Belt R. Co., 119 Ala. 106 (24 So. 114). Thus it was held in the *Tennille* case, supra, under the act of February 28, 1877, which provided that the State would not allow foreign corporations to own five thousand acres or more of land unless they should become incorporated under the laws of Georgia, that the State alone could question the right of foreign corporations to hold land contrary to the provisions of the statute. But this principle has no application to a case where a corporation by its cross-bill is seeking the aid of a court of equity to enable it to acquire and own lands which by its charter it has no power to acquire and own. 10 Cyc. 1135; Case *v.* Kelly, 133 U. S. 21 (10 Sup. Ct. 216, 33 L. ed. 513); note to Hanson case, 32 L. R. A. 293; Pacific R. Co. *v.* Seely, 45 Mo. 212 (100 Am. D. 369). The distinction between the two classes of cases is, that the courts will not interfere with a contract that is executed, but will refuse to aid a corporation in enforcing a contract for the purchase of land that is merely executory. The contract in the present case is executory. Under its charter powers, the defendant is seeking specific performance of a contract for the purchase of a plantation consisting of 404¾ acres of farm land at the price of $7,500. It claims to have paid $300 on the purchase-price of the land, and to have assumed a debt due Mrs. Wright of $2,300, which was to be paid as follows: $1,450 on

January 1, 1913, and the remainder, $3,750, on January 1, 1914, with interest at eight per cent. per annum on deferred payments. The testimony shows that Kohlruss, the plaintiff, executed his note to Mrs. Wright for $2,300 and made her a deed to the land to secure the same. The bond for title given by her to Kohlruss was transferred by the latter to the corporation, which holds it. If the Wright note should not be paid by the corporation, Kohlruss is still liable on the note. The note is not paid, so far as the evidence discloses. Nor has Mrs. Wright executed a deed under the bond for title to the defendant corporation, nor does it appear that she took any part in the transaction. The contract, therefore, is not executed but executory as to the corporation. The plaintiff is in possession of the land, and the defendant corporation seeks to compel specific performance of the contract by its cross-bill. Under such circumstances the plaintiff can raise the question of authority of the corporation to take the title to farm lands, as being ultra vires.

The members of the court concur in the rules of law above announced, but there is not unanimity as to the application of them to the facts of the present case. The opinion of the members of the court other than the writer on this subject is as follows: In the Civil Code, § 2216, is contained a statement of the powers common to all corporations. Among these is, "to receive donations by gift or will, to purchase and hold such property, real or personal, as is necessary to the purpose of their organization, and to do all such acts as are necessary for the legitimate execution of this purpose." By § 2823 it is declared that corporations organized by the superior court "may exercise all corporate powers necessary to the purpose of their organization, but shall make no contract, or purchase or hold any property of any kind, except such as is necessary in legitimately carrying into effect such purpose, or for securing debts due to the company." The word "necessary," as employed in these two sections, is to be given a reasonable construction, and not to be so construed as to hamper and obstruct, or practically prevent, the profitable and reasonable exercise of the corporate powers and the conduct of the corporate business. Thus many contracts may be made which are not in an absolute sense essential to the conduct of business, and yet may be legitimate as advancing the principal business or rendering it more profitable.

Such contracts would not be invalid. In Spear *v.* Crawford, 14 Wend. 20 (28 Am. D. 513), it was said that the land which a canal company may buy is not limited to a mere passage for the canal, but that a reasonable discretion is vested in the company in respect to the purchase. On the other hand, in Pacific R. Co. *v.* Seely, 45 Mo. 212 (100 Am. D. 369), it was held that a railroad has no authority to acquire land for purposes of speculation, under a grant of power to acquire and hold sufficient real estate for the construction of its road and for the erection of depots, engine-houses, etc. These cases will serve as illustrations of the principle involved in the case now under consideration. If the contract for the purchase of the land involved in the controversy was clearly beyond the corporate power, that question could be raised when it sought to enforce specific performance, and an injunction would be granted to restrain the corporation from taking possession or interfering with the business of the landlord. The evidence on this subject is quite meager. The person who was at once the president, treasurer, and general manager of the corporation testified thus: "As to what I wanted this land for, I will say, around an oil-mill there is a great deal of waste, and this tract was bought by me to fertilize it and bring it up to a high state of cultivation from the waste and fertilizer around the oil-mill, and I wanted it for that purpose." It is not very clear whether the witness meant that there were certain products of the mill which would be wasted or lost or not profitably used otherwise than by the purchase of this land, and that it was to be used in connection with the business of the mill and as necessary for the profitable use of such waste products, or whether such purchase was reasonable in its amount for such corporate purposes. But inasmuch as the landowner was attacking the right of the corporation to have specific performance, and basing his attack on the ground that the purchase was ultra vires, the burden of establishing this defense rested upon him. And if the evidence left his defense in doubt or failed to establish it, the consequent injury fell upon him. The majority of the court are not prepared to hold that under the evidence it can be declared as matter of law that this contract was ultra vires. They think that the judge did not abuse his discretion in refusing to grant the interlocutory injunction prayed. On the subject of whether the transaction really amounted to the securing of a loan or to the

making of a sale, the evidence was conflicting; and therefore the judge had the right to exercise his discretion in finding on that subject.

The writer of this opinion can not concur in the views of the majority of the court just above stated. He is of the opinion that, assuming the contract to have been for the sale of land by the owner thereof to the corporation, the evidence so clearly shows that it was ultra vires, because the purchase was not for a purpose necessary to the corporate business, that as matter of law an injunction should have been granted.

*Judgment affirmed. Hill, J., dissents. Beck, J., absent. The other Justices concur.*