### 63117. OKEHI v. ST. PAUL FIRE & MARINE INSURANCE COMPANY.

POPE, Judge.

Appellant, Dr. Obi Okehi, brings this appeal from the grant of summary judgment in favor of St. Paul Fire and Marine Insurance Company, said judgment declaring that certain insurance policies issued by St. Paul in favor of appellant did not provide liability coverage for a certain incident alleged to have transpired between appellant and one Mary Dawn McElroy. The trial court denied appellant's motion for summary judgment, which sought a declaration affirming coverage. Appellant challenges the correctness of these rulings.

McElroy, a registered nurse at the Medical Center of Central Georgia, brought a civil complaint against appellant in the State Court of Bibb County, alleging that on March 30, 1981 appellant perpetrated an assault and battery upon her person. She sought general and punitive damages totaling $160,000.00. McElroy later amended her complaint by deleting the allegation of assault and battery and substituting in lieu thereof an allegation of false imprisonment.

The facts which gave rise to McElroy's complaint, insofar as they are relevant to this appeal, are essentially without dispute. On March 30, 1981 appellant, an obstetrician, had a patient who was in active labor admitted into the labor and delivery ward of the Medical Center of Central Georgia. Included in the pre-admission information furnished the hospital by the appellant was a request that the patient be given an epidural anesthesia and a note that the patient wished to have elective tubal sterilization immediately after delivery. When appellant arrived at the hospital, his patient was

approximately half an hour away from delivery. At this point appellant proceeded to examine his patient and discovered from the nurse present in the labor room that the patient had not executed the requisite consent form for the sterilization procedure. Upon confirming with the patient that she still wished sterilization, appellant inquired as to why the consent form had not been signed, and was informed by McElroy, the charge nurse in the hospital's labor and delivery unit, that the patient had refused the procedure. From this point appellant's version of the incident and McElroy's version diverge somewhat. However, it is undisputed that words were exchanged between appellant and McElroy, and as McElroy began to walk away from appellant, he reached out, put his hand on her shoulder, turned her around and informed her that he was not finished talking to her. Again, words were exchanged as other persons interceded.

St. Paul had issued two insurance policies to appellant which were in effect on the date of the foregoing incident, to wit: an "All-in-1 Personal Protection Policy" and a "Physicians and Surgeons Professional Policy." Following the filing of McElroy's complaint against appellant in state court, St. Paul filed this action for declaratory judgment in the Superior Court of Bibb County. The issue presented by this appeal is whether the afore-described incident is covered by either of the two insurance policies issued to appellant by St. Paul.

In granting St. Paul's motion for summary judgment, the trial court's order recited the following findings of fact and conclusions of law: "(1) The All-in-1 policy provides no coverage against the claim of false imprisonment because (a) the incident was connected with . . . Okehi's business, profession or occupation, and in the alternative because (b) the claim of false imprisonment is an intentional tort not expressly included within the limits of the policy; (2) The Physicians Professional Liability policy provides no coverage because . . . Okehi's liability did not result from his providing or withholding of professional services; and (3) The Professional Office Liability policy provides no coverage because (a) the claim was not made in connection with . . . Okehi's ownership, maintenance or use of a professional office, and (b) the incident was not the result of actions away from the office necessary in his work." Our review of the record in this case persuades us of the correctness of the first and second divisions of the trial court's order. Accordingly, we will limit our discussion in this opinion to the third division of that order.

St. Paul provided appellant with a "Physicians and Surgeons Professional Policy" which includes inter alia "Professional Office Liability Protection" up to a limit of $300,000.00. This policy, written

in what St. Paul terms "plain English," provides in pertinent part: "We'll pay damages you . . . are legally responsible for because of bodily injury, personal injury or damage to other people's property caused by an accidental event. The accidental event must happen in connection with your ownership, maintenance or use of a professional office. For us to pay a claim, however, the accidental event must take place while this agreement is in effect. It must also be something the person protected didn't expect or intend to happen." The policy continues: "We'll also cover losses you're legally responsible for that result from actions necessary in your work — even if they happen away from your office." This latter coverage is illucidated by the following example: "Walking rapidly down the hospital corridor to perform an emergency operation, you run into a visitor waiting to see a relative. The visitor is sent sprawling, breaking her ankle. Since you were on business when the incident occurred, we'll cover the costs you're legally responsible for, up to the limits of your coverage." The term "personal injury" as used in the policy is defined: "An invasion of someone's rights of the type described below: 1. False arrest. Detention. Imprisonment. Malicious persecution [sic] . . ." Finally, the policy offers the following explanation as to claims it does not cover: "Although this policy gives you broad coverage, there are some types of office claims we won't cover. *Willful acts.* We won't cover any personal injury that results when you knowingly break any law."

We are guided in our consideration of the case at bar by the principles of law set forth in *Lester v. Great Central Ins. Co.,* 138 Ga. App. 353, 354-355 (226 SE2d 149) (1976): " 'Insurance is a matter of contract, and the language used is to be accorded its general ordinary meaning, bearing in mind that the contract is to be construed in accordance with the intention and understanding of the parties, and in construing it the court cannot go further than a fair construction of the language used will permit. [Cit.] . . . Where the contract is unambiguous, it must be construed to mean what it says. This rule applies to language limiting coverage. [Cit.]' [Cit.] Of·course if the contract is ambiguous the ambiguity is to be resolved against the insurer. [Cit.] But ambiguity is not to be created by lifting a clause or portion of the contract out of context. [Cit.] The natural, obvious meaning is to be preferred over any curious, hidden meaning which nothing but the exigency of a hard case and ingenuity of a trained and acute mind would discover." In our opinion, the terms of the policy under consideration here are unambiguous, but we arrive at a different interpretation thereof from that given by the trial court. Accord, *Interstate Fire Ins. Co. v. Nat. Indem. Co.,* 157 Ga. App. 516 (277 SE2d 802) (1981).

1. Although entitled "Professional Office Liability Protection,"

the policy specifically includes losses which happen away from appellant's office if said losses result from actions *necessary* in his work. St. Paul argues that the incident between appellant and McElroy was not *necessary* to appellant's work and was therefore not covered by the policy.

"This word ['necessary'] must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought. It is an adjective expressing degrees . . ." Black's Law Dictionary 1181 (4th ed.1968). The word "necessary" as employed in the policy must be given a reasonable construction and not be so construed as to hamper and obstruct, or practically prevent, coverage " '. . . on the theory that the insurer [St. Paul], having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.' " *Alley v. Great American Ins. Co.,* 160 Ga. App. 597, 600 (287 SE2d 613) (1981); see *Kohlruss v. Zachery,* 139 Ga. 625 (77 SE 812) (1913); *Piedmont Cotton Mills v. Ga. R. &c. Co.,* 131 Ga. 129 (3) (62 SE 52) (1908); *Justices of the Inferior Court v. Griffin & W. P. Plank Road Co.,* 9 Ga. 475 (4) (1851).

In light of the example set forth in the policy, in which the doctor was running down the hospital corridor in order to get to an emergency operation, the word "necessary" as used in the policy clearly connotes that which is useful, appropriate, suitable or proper as opposed to absolute physical necessity. Since the facts of record in the case at bar disclose without dispute that the incident between appellant and McElroy arose in a medical setting which demanded appellant's immediate attention, the trial court erred in concluding as a matter of law that appellant's actions were not "necessary" in his work.

2. St. Paul also contends that the incident between appellant and McElroy did not fall within the policy's definition of an accidental event. The policy provides that an accidental event causing injury or damage must be something appellant did not expect or intend to happen. This language seemingly excludes coverage of intentional torts. However, the policy defines personal injury as specifically including coverage for false arrest, detention and imprisonment.

McElroy's complaint against appellant alleged false imprisonment. "False imprisonment consists in the unlawful detention of the person of another, for any length of time, whereby he is deprived of his liberty." Code Ann. § 105-901. Although the facts of record may have set forth a claim by McElroy for assault and battery,

these same facts do not preclude her claim for false imprisonment. See, e.g., *Sinclair Refining Co. v. Meek,* 62 Ga. App. 850 (3) (10 SE2d 76) (1940). Therefore, coverage of the incident is not excluded by the policy's definition of accidental event.

3. Finally, St. Paul argues that the incident is excluded from coverage under the policy as a willful act. The policy specifically excludes a willful act which results when the insured knowingly breaks any law. However, the term "unlawful" as used to describe detention in Code Ann. § 105-901 does not necessarily imply an element of criminality, although broad enough to include it. Black's Law Dictionary 1705, supra; see *Arlington Cemetery Corp. v. Hoffman,* 216 Ga. 735, 738 (119 SE2d 696) (1961). The record does not disclose that appellant has been charged with breaking any law as a result of the incident with McElroy. Therefore, the incident alleged in McElroy's complaint is not specifically excluded from coverage as a willful act as defined by the policy.

For the foregoing reasons the judgment of the trial court is reversed with direction that summary judgment be entered in favor of appellant.

*Judgment reversed with direction. Quillian, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 18, 1982 —
REHEARING DENIED MARCH 30, 1982.

O. Hale Almand, Jr., W. Terrell Wingfield, Jr., for appellant.
Mallory C. Atkinson, Jr., H. T. O'Neal, Manley F. Brown, for appellee.