**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellee,**

v.

**Catherine McBRAYER, and Robert Davis, d/b/a Steakhouse Cafe, Appellant.**

No. 85–5431.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1986.

Decided Sept. 22, 1986.

Rehearing Denied Oct. 16, 1986.

Mitchell C. LaFleur, Rapid City, S.D., for appellant.

Wayne F. Gilbert, Rapid City, S.D., for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and REGAN,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Catherine McBrayer appeals from a judgment entered against her on St. Paul Fire & Marine Insurance Company's declaratory judgment action. McBrayer was injured when her employer, Robert Davis, grabbed hold of her and ushered her out of his restaurant in which she was employed. She settled her claim for personal injuries against Davis on the basis that any judgment would be collectible only from St. Paul, Davis' liability insurer. The magistrate held that Davis' ejection of McBrayer was not an accidental event within the meaning of the policy. McBrayer argues on appeal that the magistrate erred in concluding that the policy was clear and unambiguous and excluded coverage for her injuries. We affirm the judgment of the district court.[1]

McBrayer and Davis had a disagreement over whether she or another employee had been adjusting the thermostat controls of an air-conditioning unit while Davis was working on it. At the onset of the dispute, McBrayer was discharged by Davis. She then attempted to leave the premises

---

* The HONORABLE JOHN K. REGAN, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable F. Thomas Parker, United States Magistrate for the District of South Dakota.

through the front of the building, but Davis stopped her and forced her to leave the building through a rear side door. To do so Davis grabbed McBrayer by the arm and neck and escorted her through the hallway and out the back door of the cafe.

McBrayer was sixty-five years old and suffering from degenerative arthritis. Her doctors testified that she suffered an aggravation of this pre-existing condition as a result of this incident.

Davis' liability policy provided coverage for bodily injury "resulting from an accidental event." [2] It further described an accidental event as "something you didn't expect or intend to happen." The magistrate's order defines the facts surrounding the issue on appeal as follows:

> There is no dispute, but that the defendant Davis did intend to remove the defendant McBrayer from the premises and intentionally grabbed hold of her arm and neck in the process of doing so. Likewise, it is agreed that the defendant Davis did not intend to cause any physical injury to her thereby.

The magistrate determined that the coverage of the policy did not extend to the incident in this case.

McBrayer argues that policy exclusions are to be interpreted narrowly and because Davis did not intend to injure McBrayer and was unaware that she suffered from a pre-existing degenerative arthritic condition, there was an accidental injury within the terms of the policy.

We are satisfied that the magistrate did not err in determining that Davis intended to grab McBrayer and that this could not be described as an accidental event. He concluded that the terms of the policy were unambiguous and clear even though a policy must be construed liberally in favor of the insured.

In this diversity case the district court or magistrate must determine what the highest state court would probably hold if it were called upon to decide the issue. *Hazen v. Pasley*, 768 F.2d 226, 228 (8th Cir.1985). St. Paul admits that South Dakota law has no decisions directly on point but it cites the principle that the South Dakota Supreme Court has consistently interpreted a policy or contract of insurance according to the plain and ordinary meaning of the language used in the policy. *Larson v. Continental Casualty Co.*, 377 N.W.2d 148, 149–50 (S.D.1985); *Grandpre v. Northwestern National Life Insurance Co.*, 261 N.W.2d 804, 807 (S.D.1977). We do not believe that the magistrate, an experienced state trial judge in South Dakota, erred in his determination that the policy language refers to accidental conduct as opposed to accidental result.

McBrayer relies principally upon *Auto-Owner Insurance Co. v. Jensen*, 667 F.2d 714 (8th Cir.1981), and *Farmers Insurance Co. v. Vagnozzi*, 138 Ariz. 443, 675 P.2d 703 (1983) (en banc). In *Jensen*, we were presented with the following policy language:

> To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under the contract as defined herein, for *damages because of*
> A. *bodily injury* or
> B. property damage
> *neither expected nor intended from the standpoint of the insured.*

667 F.2d at 720 n. 7 (emphasis added). The emphasized language obviously refers to damages arising from *injury* that the insured neither expected nor intended to cause. This is in contrast to the policy language now before us, which explicitly

**2.** The policy language was as follows:
Your general liability protection covers you and other persons protected under this agreement against claims for bodily injury or damage to tangible property resulting from an accidental event. Bodily injuries resulting in sickness, disease or death, including damages for care and loss of services, are covered. So is the loss of use of tangible property. * * * However, for us to pay a claim, the accidental event must take place while this agreement is in effect and must be something you didn't expect or intend to happen.

refers to damages and injuries arising from an accidental *event,* with "event" being further defined as something the insured did not expect or intend to happen.

Likewise, the policy in *Vagnozzi* provided that the insurance company would pay "all damages from an accident which an insured is legally liable to pay because of bodily injury * * *." 138 Ariz. at 444, 675 P.2d at 704. "Accident" was then defined as "a sudden event ... resulting in bodily injury or property damage neither expected or intended by the insured." *Id.* The policy expressly excluded from coverage bodily injury "arising as a result of intentional acts of the insured." *Id.* The court construed the policy definition of accident as referring to an unexpected or unintended result or injury, rather than unexpected or unintended conduct. *Id.* at 449, 675 P.2d at 709–10. Again, however, the language of the *Vagnozzi* policy is distinguishable from the language we now consider. The St. Paul policy definition of accidental event is modified by the "unexpected, unintended" language. The *Vagnozzi* policy by its terms requires that the *injury* be unexpected or unintended. *Id.* at 444, 675 P.2d at 704. McBrayer's reliance on *Jensen* and *Vagnozzi* is misplaced.

St. Paul claims that its policy definition of the term "accidental event" is unique and calculated to avoid liability based on intentional conduct. It points to two cases involving exactly the same policy language, *St. Paul Fire and Marine Insurance Co. v. Superior Court,* 161 Cal.App.3d 1199, 208 Cal.Rptr. 5 (1984), and *Okehi v. St. Paul Fire and Marine Insurance Co.,* 161 Ga.App. 851, 289 S.E.2d 810 (1982), neither of which, however, turned on the precise issue of conduct versus result that is presented here.

■ Thus, neither McBrayer nor St. Paul has drawn to our attention authority that is helpful in resolving the issue before us. We think, however, that the language of the policy is clear and unambiguous. We are also mindful of the South Dakota Supreme Court's admonition that we construe policies of insurance according to the plain and ordinary meaning of their language. *Larson,* 377 N.W.2d at 149–50; *Grandpre,* 261 N.W.2d at 807. St. Paul's policy explicitly covers injuries *resulting* from an accidental event, and defines the *event* as being unexpected or unintended. We think it is plain that St. Paul's liability is contingent on the insured's conduct or actions being unintentional. McBrayer admits that the insured's conduct—grabbing her arm and neck and forcibly ejecting her from his premises—was intentional. Therefore, we believe the magistrate correctly held that St. Paul is not liable to McBrayer on its policy of insurance. In light of our disposition of this case, we need not address McBrayer's claim of vexatious refusal to pay.

We affirm the judgment of the district court.